Commonwealth of Pennsylvania, Acting by Attorney General Robert P. Kane, *v.* Robert R. Flick et al. Robert R. Flick, Appellant.

Argued October 5, 1977, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Rogers and Blatt.

*F. Paul Laubner,* with him *Kitey and Laubner,* for appellants.

*Judith Brown Schimmel,* Deputy Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., February 10, 1978:

Robert R. Flick (Defendant) has appealed from the adjudication of the court of common pleas ordering his incarceration for failure to purge himself of civil contempt by paying $34,000 in civil penalties imposed by the court under Section 8 of the Unfair Trade Practices and Consumer Protection Law (Act), Act of December 17, 1968, P.L. 1224, *as amended,* 73 P.S. §201-8. We affirm.

Defendant operated a business involving the door-to-door sale of photo album plans. Each plan purported to provide the purchasing family with a specified number of photographs "for life" for an agreed-upon sum, usually paid in installments following a down payment which varied in amount from case to case.

On December 12, 1973, the Attorney General, acting pursuant to Section 4 of the Act, 73 P.S. §201-4, filed a complaint in equity seeking to restrain Defendant from engaging in certain sales solicitation techniques. The same day the parties entered into a consent agreement, which the court embodied in an order, wherein Defendant agreed:

for himself, his heirs, administrators, successors, assigns, agents, employees and representatives acting on his behalf . . .:

  a. The Defendant shall not engage in unfair and misleading conduct by using names other than his own, i.e., Robert Flick. In addition, all of Robert Flick's employees shall in any sales transaction use only their given name;

  b. The Defendant shall not, in any sales representation, use an affiliation with any busi-

ness, other than Robert's Studio or any business-related service unless he is actually a member of such business or business-related service;

c. The Defendant shall not use the business name 'Lehigh Valley Photographers Association';

d. The Defendant shall not misrepresent photo albums as free so long as such album is received only if a purchase of or contract for photographs is made;

e. The Defendant shall not refuse to honor all cancellation notices sent him in accordance with Section 7 of the Unfair Trade Practices and Consumer Protection Law;

f. The Defendant shall not engage in any other conduct which might create the likelihood of misunderstanding by its customers.

Thereafter, in July, 1975, the Attorney General again sought to enjoin certain of Defendant's business practices and also sought relief for alleged violation of the earlier order. The parties entered into a second consent agreement, which the court approved by order entered November 14, 1975, and which provided that Defendant agreed:

for himself, his successors, agents, employees, and all persons acting on his behalf, directly or through any corporate device, as follows:

1. Defendant SHALL NOT use any fictitious business name unless said name is registered in accordance with Section 1 of the Act of May 24, 1945, P.L. 967, as amended, September 30, 1965, P.L. 571, 54 P.S. §28.1(a) (1975 Supp.)

2. Defendant SHALL NOT misrepresent the availability of and/or location of photographic studio services.

3. Defendant SHALL NOT require the payment of additional fees for contractual goods and/or services, except that Defendant may, as a term of the original agreement with individuals, provide for the deposit of a reasonable sum by individuals who desire to take negatives and proofs from Defendant's studio(s). Provided, however, that the full amount of the deposit shall be returned to each individual returning said negatives and/or proofs, to Defendant's studio(s).

4. Defendant SHALL NOT fail to honor all notices of cancellation and/or avoidance sent in accordance with Section 7 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

5. Defendant SHALL NOT fail to give written and oral notice to customers of their right of cancellation as provided by the Federal Trade Commission Trade Regulation Rule Concerning a Cooling-off Period for Door-to-Door Sales. Any alleged violation(s) of said Rule in the future, unless and until said Rule is adopted as law in Pennsylvania, by statute or judicial opinion, shall be referred to the appropriate federal agency for enforcement. This paragraph shall not be construed to limit in any manner the rights of individual consumers conferred by said Rule.

6. Defendant SHALL NOT fail to comply with all provisions of the aforesaid Trade Regulation Rule and Section 7 of the aforesaid Act including but not limited to, that portion providing for the return of all monies paid or deposited.

7. Defendant SHALL NOT interfere with the attempts of any consumers to exercise the

rights set forth in Paragraph 4 through 6 and, specifically, SHALL NOT threaten and/or harass consumers exercising said rights.

8. Defendant SHALL NOT fail to make a good faith effort to resolve all open consumer complaints filed with the Pennsylvania Bureau of Consumer Protection. A list of the names and addresses of all such individuals is attached hereto, made a part hereof, and marked 'Exhibit A'.

9. Defendant SHALL, within sixty (60) days of the signing of this Consent Petition for Modified Permanent Injunction, file with the Bureau of Consumer Protection a report, in writing, setting forth in detail the manner and form in which he has complied and shall in the future comply with each section and term of this Consent Petition for Modified Permanent Injunction.

On February 3, 1976, the Attorney General petitioned the court to impose sanctions and penalties upon Defendant, alleging that Defendant had persistently violated both consent decrees. Hearings lasting four days and involving testimony of 26 witnesses were held before the Honorable MAXWELL E. DAVISON who, on July 20, 1976, filed his opinion. In the course of 33 findings of fact, the Chancellor enumerated 17 instances of violation of the 1973 and 1975 orders. Specifically, the court found that Defendant and his agents on numerous occasions had falsely identified themselves; had stated that they represented photo companies, the names of which had not been registered as fictitious names; had repeatedly failed to give oral notice to purchasers of the photo album plans of their right of cancellation; and had failed to call attention to, and sometimes diverted attention from, the written notice contained in the purchase agree-

ments. Additionally, the court found that, when the purchasers in question attempted to cancel their contracts, Defendant stated that the purchasers had no right to cancel, refused to return down payments, and on several occasions, engaged in intimidating, threatening and abusive language toward the consumer purchasers. The court found that these violations continued up to and even during the pendency of the hearings before it, and found that Defendant had made no effort to comply with the terms of the consent decrees, much less file a report outlining the manner of its compliance, as required by paragraph 9 of the later order.

The court fined Defendant $2,000 for each violation, under Section 8 of the Act, making a total civil penalty of $34,000, and ordered him to compensate individual victims in varying amounts, totaling $785. It further found Defendant in civil contempt of its orders, from which he could purge himself by paying the above amounts within two months. When the $34,000 fine was not paid within the prescribed time, the court, following a hearing, ordered Defendant either to pay or to give satisfactory assurance of payment of all sums by October 8, 1976, or suffer incarceration until such time as he complied with the order. Defendant's application for stay was denied by the common pleas court on October 7, 1976, but a like application to this Court was granted, per President Judge Bowman, on October 8, pending a determination of this appeal.

We have held on numerous occasions that the legislative purpose in enacting the Unfair Trade Practices and Consumer Protection Law was to protect the consuming public from unfair or deceptive acts or practices of unscrupulous businessmen. *Commonwealth v. Tolleson* (First Opinion), 14 Pa. Commonwealth Ct. 72, 321 A.2d 664 (1974); *Commonwealth v. Ziomek*,

352 A.2d 235 (1976). The unfair or deceptive acts or practices which the law is designed to prevent are enumerated in Section 2(4) of the Act, 73 P.S. §201-2(4), which concludes with the catch-all clause "(xiii) Engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding." Section 4 of the Act authorizes the Attorney General to bring an action in the name of the Commonwealth "to restrain by temporary or permanent injunction the use of such method, act or practice." Once an injunction is granted, or a consent decree is entered into, the Commonwealth, through its Attorney General, is empowered by Section 8 of the Act to seek the assessment of civil penalties against a party to a decree who violates its provisions. *Commonwealth v. Tolleson* (Second Opinion), 14 Pa. Commonwealth Ct. 140, 321 A.2d 701 (1974). Section 8, by its own terms, authorizes the imposition of a penalty of up to $5,000 for each violation; and as we held in *Tolleson* (Second), *supra, each* improper act, *each* false statement and *each* inadequate disclosure may constitute a separate violation. Moreover, there is no doubt that in appropriate cases a court, in addition to the imposition of statutory civil penalties, may require a defendant to pay specific sums as compensation to individuals who have been harmed by the defendant's illegal acts. *Commonwealth v. Ziomek, supra,*

Defendant Flick does not challenge these rules, but does contend that the court has no inherent or statutory power to order him incarcerated pending payment of the civil penalty and that, assuming *arguendo* the court does have that power, it did not properly consider his ability to pay. We find no merit in either contention. In *Americans Be Independent v. Commonwealth*, 14 Pa. Commonwealth Ct. 179, 321 A.2d 721 (1974), we said, through Judge KRAMER, that a proceeding brought pursuant to the enforcement provi-

sions of Section 8 of the Unfair Trade Practices and Consumer Protection Law is "an action in the nature of a contempt proceeding which is based upon a statutorily provided method of enforcement known as civil penalties." To us, there is no doubt that the type of contempt involved in these proceedings is civil, and is not criminal.

While there is no bright line distinction between the two varieties of contempt, because civil and criminal contempt share common attributes (which plagues litigants, counsel and the Courts), it is well settled that it is the *dominant purpose* of the particular contempt citation which determines its nature. *Brocker v. Brocker,* 429 Pa. 513, 241 A.2d 336 (1968). Here, the dominant purpose of the penalty is to coerce future compliance with the lawfully entered court orders, rather than to punish Defendant for past violations or to vindicate the dignity and authority of the court. This being so, the citation sounds in civil, not criminal, contempt.

Our conclusion here is in accord with the cases interpreting the enforcement provisions of the Federal Trade Commission Act.[1] That law and the Lanham Trademark Act[2] were the models for Pennsylvania's Unfair Trade Practices and Consumer Protection Law and, hence, we may in confidence look to decisions under those acts for guidance in interpreting the Pennsylvania Act. *Commonwealth v. Hush-Tone Industries, Inc.,* 4 Pa. Commonwealth Ct. 1 (1971). In *United States v. J. B. Williams Co.,* 354 F. Supp. 521 (S.D. N.Y. 1973), *rev'd in part on other grounds,* 498 F.2d 414 (2d Cir. 1974), the court held that, even though the sanction imposed under Section 5(1) of the FTC Act, which, like Section 8 of Pennsylvania's Act, prescribes

---

[1] 15 U.S.C.A. §41 et seq.

[2] 15 U.S.C.A. §1051 et seq.

a $5,000 penalty for each violation, may have severe effects on the violator and may not actually compensate the victim of the violator's illegal practices, the penalties are not punishment in the criminal law sense, but are an integral part of the Act's regulatory scheme, and the proceeding to impose them is analogous to a proceeding in *civil* contempt.

This being so, the court has at its disposal all of the remedies afforded by the law of civil contempt, including the power to incarcerate to force compliance. *See In Re Martorano,* 464 Pa. 66, 346 A.2d 22 (1975).

Finally, we have thoroughly reviewed the record and find in it ample support for the penalty imposed by the lower court. In *United States v. J. B. Williams Co., supra,* the court cited three criteria for calculating the amount of the penalty to be assessed against a defendant in actions under the FTC Act: (1) the defendant's financial ability to pay; (2) the degree of harm which defendant may have caused; and (3) the defendant's good or bad faith in violating the order. Following a hearing before the court below on October 5, 1976, limited to the question of the amount of the penalty, and after this Court stayed the lower court's order for Defendant's incarceration, the lower court filed a second opinion explaining its arrival at the $34,000 penalty. It reviewed the evidence of Defendant's assets and concluded that he had the ability to pay or make provision for paying, at least on an installment basis. That conclusion is well founded and we shall not disturb it. With respect to the other factors, we believe Judge DAVISON's characterization of Defendant's conduct is as succinct and comprehensive a review as can be made and therefore, having verified its accuracy, we quote it at length:

In the instant case, the harmful impact was seemingly focused on young, newly married cou-

ples who lacked the education to perceive the deception, and were without the business experience and the financial capacity to absorb the impact. The evidence demonstrated that the defendant rode roughshod over this segment of the public. The parade of pocketbook victims who testified were clearly no match for the sophisticated smooth-talking of Flick and his operatives. . . .

. . . The actions of the defendant in the matter at bar were not those of mistake, inadvertence or ordinary negligence *but,* on the contrary, constituted flagrant, deceitful and intentional acts. Flick knowingly misrepresented to the consumer his or her rights, even stating that there was no right of cancellation; he used the wrong date when he did inform the consumer of his or her right of cancellation. There was ample testimony that Flick deliberately misrepresented himself as an attorney, as the district attorney, as a representative of Welcome Wagon and as various other named persons when it served his interests to do so; he harassed and demeaned consumers up to and throughout the hearings, acting, in effect, contemptuously of the Court; he filed affidavits with the Court which were in fact not true; he deceived District Magistrates in causing hearings to be postponed on the grounds that he had died; and, to date, he has failed to show any remorse for his blatant violations or for those persons who bore the brunt, and continue to do so, of his unscrupulous practices. The defendant has deliberately disregarded the law, has outright refused to honor lawful cancellation rights and has threatened customers who endeavor to exercise their lawful rights. Al-

though we would have preferred Flick's voluntary compliance, we find our position not unlike that of Judge Kramer in Ziomek:

'The Court does not relish the prospect of imposing sanctions on Ziomek, and would much prefer that the policy of the law be accomplished by voluntary compliance with this Court's orders. Unfortunately, Ziomek, through a deliberate course of conduct, has left the Court with no alternative but to invoke its inherent power to force compliance. Brocker v. Brocker, 429 Pa. 513, 241 A.2d 336 (1968).'

In assessing appropriate penalties, the Court may properly consider the total amount of payments received by the defendant in violation of Court Orders, United States v. Ancorp National Services, Inc., 367 F. Supp. 1221, 1224 (S.D. N.Y. 1973), and what amount is sufficient to compel the defendant to comply and to create a deterrent to further delay or noncompliance. That is, the penalties must be sufficient to eliminate an 'acceptable cost of violation.' United States v. Papercraft Corporation, 393 F. Supp. 415 (W.D. Pa. 1975). Here, the penalty previously assessed may have been an acceptable cost, since defendant was not deterred from these practices as late as the final hearing on this case. . . .

The decision of the court below is affirmed. The Stay Order entered by this Court on October 8, 1976, is hereby vacated.

### ORDER

AND Now, this 10th day of February, 1978, the decision and order of the Court of Common Pleas of Lehigh County is affirmed. The Stay Order entered by this Court on October 8, 1976, is hereby vacated.