In re Robert R. J. FLICK a/k/a Robert R. Flick, Bankrupt.

COMMONWEALTH OF PENNSYLVANIA by its Attorney General, Gerald Gornish, Plaintiff,

v.

Robert R. FLICK, Defendant.

Bankruptcy No. 78–1681TT.

United States Bankruptcy Court, E. D. Pennsylvania.

Aug. 14, 1980.

Mitchell W. Miller, Philadelphia, Pa., for debtor.

E. Keller Kline III, Allentown, Pa., Trustee.

Gerald Gornish, Atty. Gen., Commonwealth of Pennsylvania, Dept. of Justice, Harrisburg, Pa., Lance H. Lilien, Joel Weisberg, Judith Brown Schimmel, Deputy Attys. Gen., Harrisburg, Pa., for plaintiff.

OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Plaintiff, Commonwealth of Pennsylvania [hereinafter referred to as the Commonwealth] seeks a determination that the Bankruptcy Act does not prohibit its enforcement of certain outstanding judgments against the defendant-debtor, and, in the alternative, the Commonwealth prays that this Court lift the stay imposed by Rule 401 of the Rules of Bankruptcy Procedure [hereinafter cited as Bankruptcy Rules] to permit the Commonwealth to con-

tinue contempt enforcement proceedings against the debtor.[1] For reasons hereinafter set forth, we conclude that the stay imposed first by Bankruptcy Rule 13–401 and, then, after adjudication, by Bankruptcy Rule 401, do indeed preclude the enforcement of state court contempt proceedings against the debtor without prior order of this Court. However, we further conclude that the Commonwealth is entitled to relief from the automatic stay.[2]

The facts of this case are as follows:[3] Defendant Flick operated a business involving the door-to-door sale of photograph album plans. Each plan purported to provide the purchasing family with a specified number of photographs for an agreed-upon sum, usually paid in installments, following a down payment which varied in amount from case to case.

On December 12, 1973, the Commonwealth, through the Attorney General, filed a complaint in equity seeking to restrain defendant from engaging in certain sales solicitation techniques alleged to be violative of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (codified at Pa.Stat.Ann. tit. 73, §§ 201–1 to 201–9 (Purdon 1971)) [hereinafter cited as the Pennsylvania Act].[4] On the same day, the parties entered into a consent agreement, then embodied in a court order, whereby the defendant agreed not to engage in certain practices.

In July, 1975, the Attorney General again sought relief in equity against the defendant, pursuant to which the parties entered into a second consent agreement, approved by order of court on November 14, 1975, defendant again agreeing not to engage in certain practices. Then,

On February 3, 1976, the Attorney General petitioned the court to impose sanctions and penalties upon Defendant, alleging that Defendant had persistently violated both consent decrees. Hearings lasting four days and involving testimony of 26 witnesses were held before the Honorable Maxwell E. Davison who, on July 20, 1976, filed his opinion. In the course of 33 findings of fact, the Chancellor enumerated 17 instances of violation of the 1973 and 1975 orders. Specifically, the court found that Defendant and his agents on numerous occasions had falsely identified themselves; had stated that they represented photo companies, the names of which had not been registered as fictitious names; had repeatedly failed to give oral notice to purchasers of the photo album plans of their right of cancellation; and had failed to call attention to, and sometimes diverted attention from, the written notice contained in the purchase agreements. Additionally, the court found that, when the purchasers in question attempted to cancel their contracts, Defendant stated that the purchasers had no right to cancel, refused to return downpayments, and on several occasions, engaged in intimidating, threatening and abusive language toward the consumer purchasers. The court found that these violations continued up to and even during the pendency of the hearings before it, and found that Defendant had made no effort to comply with the terms of the consent decrees, much less file a report outlining the manner of its compliance, as required by paragraph 9 of the later order.

1. Robert Flick originally sought relief from this Court on November 13, 1978, by the filing of a petition under Chapter XIII of the old Bankruptcy Act, applicable to all cases filed prior to October 1, 1979. See Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, Title IV, § 403(a), 92 Stat. 2591 (1978). On December 20, 1978, defendant Flick was adjudicated a bankrupt.

2. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 752.

3. Our factual summary is drawn mainly from the opinion of the Commonwealth Court, Commonwealth v. Flick, 33 Pa.Cmwlth. 553, 382 A.2d 762 (1978).

4. The Pennsylvania Act has since been amended. See Pa.Stat.Ann. tit. 73, §§ 201–1 to 201–9.2 (Purdon Supp.1980).

The court fined Defendant $2,000 for each violation, under Section 8 of the Act [Pa.Stat.Ann. tit. 73, § 201–8], making a total civil penalty of $34,000, and ordered him to compensate individual victims in varying amounts, totaling $785. It further found Defendant in civil contempt of its orders, from which he could purge himself by paying the above amounts within two months. When the $34,000 fine was not paid within the prescribed time, the court, following a hearing, ordered Defendant either to pay or to give satisfactory assurance of payment of all sums by October 8, 1976, or suffer incarceration until such time as he complied with the order. . . .

Pa.Cmwlth. at 558–559, 382 A.2d at 764.

The Commonwealth Court affirmed the lower court's decision. The Pennsylvania Supreme Court subsequently denied defendant's allocatur petition. On November 13, 1978, Judge Maxwell E. Davison of the Lehigh County Court of Common Pleas entered an order directing the Sheriff of Lehigh County to "forthwith take Robert R. Flick into custody, and transport him without delay to the Lehigh County Prison for incarceration . . . for a maximum period of 120 days. . . ." Later that same day, defendant filed for relief under Chapter XIII of the Bankruptcy Act.

■ First, the Commonwealth seeks a declaration that § 11 of the Bankruptcy Act, 11 U.S.C. § 29 (repealed 1979) does not stay "state enforcement of contempt proceedings." Plaintiff's Complaint, ¶ 5. Section 11 of the Bankruptcy Act must be read in conjunction with Bankruptcy Rule 13–401 (since this was originally a Chapter XIII case), Bankruptcy Rule 401 and § 17c(4).[5]

We conclude that the statutory and rules provisions regarding relief from stay and dischargeability—and in this case these two subjects are inextricably intertwined—do indeed stay the Commonwealth's actions against the bankrupt. We rely primarily on Bankruptcy Rules 13–401 and 401. Rule 13–401 stays without qualification "the enforcement of any judgment" against the bankrupt; Rule 401 specifically stays enforcement of any judgment founded on an unsecured provable debt other than one not dischargeable under § 17a(1), (5)(6) or (7). If this debt is not dischargeable, it is for reasons other than § 17a(1), (5), (6) or (7).[6]

---

**5.** The various provisions cited read, in pertinent part, as follows:

> Section 11. Suits By and Against Bankrupts. a. A suit which is founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of the filing of a petition by or against him, shall be stayed until an adjudication or the dismissal of the petition; if such person is adjudged a bankrupt, such action may be further stayed until the question of his discharge is determined by the court after a hearing, or by the bankrupt's filing a waiver of, or having lost, his right to a discharge, or, in the case of a corporation, by its failure to file an application for a discharge within the time prescribed under this Act . . . . .
> Bankruptcy Rule 401:
> (a) *Stay of Actions.* The filing of a petition shall operate as a stay of the commencement or continuation of any action against the bankrupt, or the enforcement of any judgment against him, if the action or judgment is founded on an unsecured provable debt other than one not dischargeable under clause (1), (5), (6), or (7) of § 17a of the Act . . . . .
> Bankruptcy Rule 13–401:
> (a) *Stay of Actions And Lien Enforcement.* A Petition filed under Rule 13–103 or Rule 13–104 shall operate as a stay of the commencement or continuation of any action against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding for the purpose of rehabilitation of the debtor or the liquidation of his estate.
> Section 17c(4):
> (4) The provisions of this subdivision c shall apply whether or not an action on a debt is then pending in another court and any party may be enjoined from instituting or continuing such action prior to or during the pendency of a proceeding to determine its dischargeability under this subdivision c.

**6.** Section 17a provides, in pertinent part:
> a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy: *Provided, however,* That a discharge

As long as there does remain a question of dischargeability, relief from the automatic stay would be premature. *See* Advisory Committee's Note following Bankruptcy Rule 401 (11 U.S.C.App.).

Second, after having determined that the automatic stay does operate in this situation, the Court must now decide whether to grant the Commonwealth relief therefrom. The answer to this question involves, in essence, a determination of the dischargeability of the debt owed the Commonwealth, *viz.*, $34,000 in civil penalties imposed by a state court pursuant to state statutory authority. The nature of these penalties, as described by the Commonwealth Court, is as follows:

We have held on numerous occasions that the legislative purpose in enacting the Unfair Trade Practices and Consumer Protection Law was to protect the consuming public from unfair or deceptive acts or practices of unscrupulous businessmen. *Commonwealth v. Tolleson* (First Opinion), 14 Pa.Cmwlth. 72, 321 A.2d 664 (1974); *Commonwealth v. Ziomek*, Pa.Cmwlth., 352 A.2d 235 (1976). The

unfair or deceptive acts or practices which the law is designed to prevent are enumerated in Section 2(4) of the Act, 73 P.S. § 201–2(4), which concludes with the catch-all clause "(xiii) Engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding." Section 4 of the Act authorizes the Attorney General to bring an action in the name of the Commonwealth "to restrain by temporary or permanent injunction the use of such method, act or practice." Once an injunction is granted, or a consent decree is entered into, the Commonwealth, through its Attorney General, is empowered by Section 8 of the Act to seek the assessment of civil penalties against a party to a decree who violates its provisions. *Commonwealth v. Tolleson* (Second Opinion), 14 Pa.Cmwlth. 140, 321 A.2d 701 (1974). Section 8, by its own terms, authorizes the imposition of a penalty of up to $5,000 for each violation; and as we held in *Tolleson* (Second), *supra, each* improper act, *each* false statement and *each* inadequate disclosure may constitute a separate violation. More-

in bankruptcy shall not release a bankrupt from any taxes (a) which were not assessed in any case in which the bankrupt failed to make a return required by law, (b) which were assessed within one year preceding bankruptcy in any case in which the bankrupt failed to make a return required by law, (c) which were not reported on a return made by the bankrupt and which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt, (d) with respect to which the bankrupt made a false or fraudulent return, or willfully attempted in any manner to evade or defeat, or (e) which the bankrupt has collected or withheld from others as required by the laws of the United States or any State or political subdivision thereof, but has not paid over; but a discharge shall not be a bar to any remedies available under applicable law to the United States or to any State or any Subdivision thereof, against the exemption of the bankrupt allowed by law and duly set apart to him under this Act: *And provided further,* That a discharge in bankruptcy shall not release or affect any tax lien; (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renew-

al of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another; (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy; (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity; (5) are for wages and commissions to the extent they are entitled to priority under subdivision (a) of section [64] of this [Act]; (6) are due for moneys of an employee received or retained by his employer to secure the faithful performance by such employee of the terms of a contract of employment; (7) are for alimony due or to become due, or for maintenance or support of wife or child, or for seduction of an unmarried female, or for breach of promise of marriage accompanied by seduction, or for criminal conversation; or (8) are liabilities for willful and malicious injuries to the person or property of another other than conversion as excepted under clause (2) of this subdivision. . . .

over, there is no doubt that in appropriate cases a court, in addition to the imposition of statutory civil penalties, may require a defendant to pay specific sums as compensation to individuals who have been harmed by the defendant's illegal acts. *Commonwealth v. Ziomek, supra.* . . . In *Americans Be Independent v. Commonwealth,* 14 Pa.Cmwlth. 179, 321 A.2d 721 (1974), we said, through Judge Kramer, that a proceeding brought pursuant to the enforcement provisions of Section 8 of the Unfair Trade Practices and Consumer Protection Law is "an action in the nature of a contempt proceeding which is based upon a statutorily provided method of enforcement known as civil penalties." To us, there is no doubt that the type of contempt involved in these proceedings is civil, and is not criminal.

While there is no bright line distinction between the two varieties of contempt, because civil and criminal contempt share common attributes (which plagues litigants, counsel and the Courts), it is well settled that it is the *dominant purpose* of the particular contempt citation which determines its nature. *Brocker v. Brocker,* 429 Pa. 513, 241 A.2d 336 (1968). Here, the dominant purpose of the penalty is to coerce future compliance with the lawfully entered court orders, rather than to punish Defendant for past violations or to vindicate the dignity and authority of the court. This being so, the citation sounds in civil, not criminal contempt. 33 Pa.Cmwlth. at 559–561, 382 A.2d at 765.

■ The Pennsylvania appellate court has unequivocally characterized these penalties as civil in nature, *i. e.,* remedial and non-punitive and, as a federal court sitting in Pennsylvania, we must accept the state, judiciary's interpretation of its own law. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[7] We now look to federal law, *i. e.,* the Bankruptcy Act, to determine the significance of the state court's decision.

■ The three operative provisions of the Bankruptcy Act pertinent to the case at bar are §§ 17a, 57j and 63a(1).[8] There seems to be agreement among the authorities that claims based upon criminal penalties fall within the ambit of § 57j and are not allowable. *See, e. g.,* 3 *Collier on Bankruptcy* ¶ 57.22[1], [2] (14th ed. 1977). The question facing this court is whether the civil penalties imposed on the bankrupt in this case constitute "penalties" within the meaning of § 57j. We conclude that the penalties imposed on the bankrupt by the state court are penalties within the meaning of § 57j and, therefore, are not allowable claims:

[T]here is . . . the natural tendency and task of the bankruptcy law to mitigate as far as possible the losses to be sustained by creditors, and under this aspect there is an undeniable equity in the postulate that participation in the estate should be denied to a creditor who has neither in some degree contributed to the distributable funds . . . nor has suffered a pecuniary loss by parting with something in money's worth. It is this consideration for the bankrupt's creditors that pervades § 57j. . . . Hence

---

7. In any event, we agree with the reasoning and conclusion reached by the state court.

8. Section 17a has been set forth in footnote 6, *supra.* Section 57j states:

j. Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued on the amount of such loss according to law.

11 U.S.C. § 93(j) (repealed 1979). Section 63(a)(1) states:

(a). Debts of the bankrupt may be proved and allowed against his estate which are founded upon (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition by or against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest; . . . .

11 U.S.C. § 103 (repealed 1979).

courts have uniformly refused to allow penalties of all types and character. . .

3 *Collier on Bankruptcy, supra,* ¶ 57.22[1] at 382.

In the case at bar, there has been no showing that any portion of the $34,000 penalty imposed on the bankrupt is for pecuniary loss suffered either by the Commonwealth or by any of the bankrupt's victims. In addition, the Commonwealth Court painstakingly pointed out that the $34,000 in penalties was "to coerce future compliance with lawfully entered court orders," 33 Pa.Cmwlth. at 561, 382 A.2d at 765, and not intended to compensate; moreover, the lower court did impose a series of separate compensatory penalties, to be paid directly to the victims. *See* 33 Pa.Cmwlth. at 559, 382 A.2d at 764. We conclude that both the language of, and policy behind, § 57j render any claim for the $34,000 debt incapable of allowance.[9]

The bankrupt, however, makes the argument that § 63a(1) negates the effect of § 57j when the penalty involved is a fixed liability, which has been reduced to judgment and is absolutely owing at the time of the filing of the petition, thereby making such debt provable and allowable (and therefore dischargeable).[10] Memorandum of Law for Defendant at 2–3. However, the court in *In re Abramson and Finlander,* 210 F. 878 (2d Cir. 1914), responded to that argument as follows:

The bankrupts contend that there is a difference between the proof and the allowance of a claim and say that the judgment may be proved under section 63a, even though section 57j prevents it from being allowed. . . .

. . . [T]hey say that the judgment being a provable debt is dischargeable under section 17, which provides that a discharge in bankruptcy shall release a bankrupt from all his provable debts, with certain exceptions which do not cover this judgment.

It must be admitted that on the face of things this argument is logical. However, the provisions under consideration are not wholly harmonious and we would not come to a conclusion so against public policy as that Congress intended bankrupts to be released from all liability for violating laws passed to protect the health of the community unless absolutely compelled to do so. Considering section 63 alone, neither penalties for violations of law nor damages arising out of such violation can be proved because they are claims in tort. On the other hand, a judgment recovered before adjudication for a definite sum could be proved, irrespective of the cause of action. But section 57j takes away from judgments for penalties their character as fixed liabilities. If the legislation stopped there, such judgments could not be proved under section 63a and would not be discharged under section 17. But section 57j in favor of the lawmaker further provides that he may recover any pecuniary damage sustained because of the act of violation. Reading the two sections together, we think that judgments for penalties are not debts which can be proved or allowed as such because they are not for a fixed liability, but that any pecuniary loss . . sustained by the act out of which the penalty arose, together with actual and reasonable costs and interest, may be proved because of the provision in section 57j. So construed the act is perfectly reasonable. The lawmaker who has suffered no pecuniary loss is not permitted to share in the assets of the estate with

---

9. The Commonwealth filed a proof of claim in this case, then petitioned for its withdrawal. By letter dated February 1, 1979, the Commonwealth withdrew its "Petition for Withdrawal of Claim."

Thus, the Commonwealth's proof of claim, apparently filed for the purpose of rejecting defendant's proposed Chapter XIII plan, remains of record.

In view of our conclusion that the claim of the Commonwealth is incapable of allowance, the issue of whether the claim can or should be withdrawn is moot.

10. Section 63a(1) is set forth in footnote 7, *supra.*

creditors who have. On the other hand, bankrupts who have violated laws passed for the public good cannot escape punishment by going into bankruptcy.

210 F. at 879–880. *See also Sherwood v. United States*, 228 F.Supp. 247 (E.D.N.Y. 1964); *In re Marcus*, 3 BCD 65 (N.D.Cal. 1977). The editors of *Collier on Bankruptcy* state:

> The Bankruptcy Act makes specific provision only for the *disallowance* of governmental claims for penalties and forfeitures. It does not expressly say that a fine or penalty claim asserted by the United States or any state or subdivision thereof is not *provable*, and considering that such a penalty claim may be based on a "judgment" in the broad sense of the term, it might seem that a fine or penalty imposed by a judgment would be provable and allowable under § 63a(1), notwithstanding § 57j. The courts have rightly decided otherwise. Faced with the inconsistency of the statutory mandate to disallow a governmental claim for a penalty and yet to allow it if evidenced by a judgment or instrument in writing (which is often the case) the courts have solved the problem by approaching it from the angle of dischargeability. It is almost generally accepted that the liability for a fine or penalty is not dischargeable, if for no other reason than the imperative necessity of enforcing criminal sanctions enacted for the public welfare. The only qualification on the enforcement of penal laws should be the inherent power in the sovereign to pardon the criminal, and it would be undesirable to allow one convicted to frustrate such enforcement by submitting to bankruptcy proceedings. This policy reasoning is, in the absence of an explicit statutory provision, a persuasive argument for holding claims for a fine or penalty non-provable, even if evidenced by a judgment or instrument in writing.

3A *Collier on Bankruptcy* ¶ 63.12 (14th ed. 1975).[11]

Defendant relies heavily on the decision in the case of *Parker v. United States*, 153 F.2d 66 (1st Cir. 1946), in which the court intimated in *dicta* that a "compensatory [civil] fine was a debt properly provable," 153 F.2d at 72; however, in that case, unlike the present case, the claimant, the government, had already received a dividend on its claim and the court was not inclined to permit the government to assert that the fine was not a provable debt. *Id.* In addition, as we have stated previously, no portion of the $34,000 debt involved herein has been shown to be compensatory in nature. To the extent that the *dicta* in *Parker* can be said to apply to the case at bar, if at all, we decline to adopt its reasoning. See 1A *Collier on Bankruptcy* ¶ 17.05 at 1587 n. 5 (14th ed. 1978).

 For the reasons given above, the stay shall be lifted and the Commonwealth permitted to pursue its remedies under state law.

---

**11.** Although this *Collier* excerpt speaks of criminal penalties, we have concluded that the same reasoning does and should apply to civil penalties of the nature of those in the case at bar.