**Roland R. ALGRANT, et al., Plaintiffs,**

**v.**

**EVERGREEN VALLEY NURSERIES LIMITED PARTNERSHIP et al., Defendants.**

**Civil Action No. 95–7224.**

United States District Court, E.D. Pennsylvania.

Sept. 30, 1996.

Alexander D. Bono, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for Plaintiffs.

E. Parry Warner, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, PA, for Parkinson Pension Trust.

Joseph A. McGinley, Lavin, Coleman, Finarelli & Gray, Philadelphia, PA, for E. Wayne Pocius, Russell M. Dimmick, Van Pines of PA, William L. Parkinson, Dr., Unique Garden Center Company.

### MEMORANDUM AND ORDER

HUYETT, District Judge.

Defendants, William L. Parkinson, D.D.S. and Parkinson Pension Trust (collectively, "Parkinson Defendants") have filed a Motion to Dismiss on the grounds that plaintiffs' Complaint is untimely and fails to state a claim.[1] The other defendants, Russell M. Dimmick, E. Wayne Pocius, Unique Garden Center Co. and Van Pines of PA, (collectively, "Unique Defendants") have joined in the Parkinson Defendants' Motion and filed separate Motions to Dismiss presenting their own arguments in favor of dismissal.

For the reasons that follow, The Parkinson Defendants' Motion will be **GRANTED** and the Complaint will be dismissed. In light of the disposition of the Parkinson Defendants' Motion, this Court does not reach the separate issues presented in the Unique Defendants' Motions and they are therefore denied as moot.

---

1. A statute of limitations defense is properly raised on a Rule 12 motion. *Davis v. Grusemey-*

## I. BACKGROUND.

For the purposes of ruling on the instant Motion to Dismiss, the Court accepts as true the following facts. *See, Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989).

Defendants, the promoters, managers and financiers of Evergreen Valley Nurseries Limited Partnership ("Evergreen") organized Evergreen in order to acquire 747 acres of nursery stock consisting of 950,000 evergreen trees growing on two properties (called "Raven Valley" and "Tioga Co."). Unique Garden Center ("Unique") is the general partner of Evergreen. Pocius and Dimmick are Unique's sole shareholders. Pocius and Dimmick are also the general partners of Van Pines of PA ("Van Pines"). Dr. Parkinson is the sole trustee of Parkinson Pension Trust ("Trust"), a tax-qualified retirement plan.

Plaintiffs, some 26 investors, bought units in Evergreen for cash, subscription notes and investor notes. The investor-plaintiffs claim they were defrauded by the defendants who inflated the value of the nursery stock by engaging in a series of self-dealing transactions.

In July of 1986, the Trust, at the direction of Dr. Parkinson, purchased the Raven Valley nursery stock from Van Pines and its general partners for approximately $3.6 million. The Trust also purchased the Tioga Co. nursery stock from Pocius and Dimmick for approximately $600,000.

After obtaining the nursery stock, the defendants agreed that Evergreen would purchase the Trust's nursery stock for the inflated price of $11.2 million. The entire price of the nursery stock was financed by a $13,500,000 offering of Evergreen units pursuant to a private placement memorandum. The plaintiff-investors paid $150,000 per unit consisting of a $70,000 cash payment, a $9,500 subscription note and a $70,500 investor note, due July 1996. When the offering was consummated, the Trust received approximately

*er,* 996 F.2d 617 (3d Cir.1993).

$4.5 million in cash and $6.2 million in notes from Evergreen, all for nursery stock originally purchased by the Trust for about $4.2 million.

The private placement memorandum failed to disclose the amounts the Trust actually paid for the nursery stock and omitted to mention, among other things, the self-dealing surrounding the Raven Valley and Tioga purchases and the nursery stock's inflated value.

In 1993, the IRS and Evergreen entered into a Closing Agreement in which Evergreen admitted that the original amount set for the value of the nursery stock was false and that the true value of the nursery stock (for income tax purposes in 1986) was $7,150,000. Plaintiffs obtained a copy of the closing agreement between the IRS and Evergreen on October 11, 1993.

Because of the Trust's expressed intent to collect on the investor notes in July of 1996, plaintiffs filed the instant Complaint on November 16, 1995—more than 2 years after receiving the Closing Agreement.

## II. DISCUSSION

The Complaint is framed in four counts. Counts I–III seek a declaration that the investor notes are void and unenforceable because they were procured by fraud. Count I requests declaratory relief under Section 29(b) of the Securities and Exchange Act of 1934 (" '34 Act"). Count II seeks declaratory and rescissory relief pursuant to Section 508 of the Pennsylvania Securities Act ("PSA"). Count III demands declaratory relief based upon common law fraudulent inducement. Count IV alleges that defendants have violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPL") and seeks treble damages.

### A. Statutes of Limitations Applicable to Declaratory Judgment Actions.

■ Actions for declaratory relief do not have their own statutes of limitations: "declaratory relief is a mere procedural device by which various types of substantive claims may be vindicated, and limitations statutes do not apply to declaratory judgments as such." *Hoagy Wrecker Service, Inc. v. Fort Wayne,* 776 F.Supp. 1350, 1359 (N.D.Ind. 1991).

■ Of course, the absence of a specific limitations statute does not mean that actions for declaratory relief may be brought at any time. *See Gilbert v. Cambridge,* 745 F.Supp. 42, 47 (D.Mass.1990), *affirmed,* 932 F.2d 51, *cert. denied,* 502 U.S. 866, 112 S.Ct. 192, 116 L.Ed.2d 153 (1991) (discussing *Town of Orangetown v. Gorsuch,* 718 F.2d 29, 42 (2d Cir.1983)). Instead, the declaratory judgment action must be brought within the limitations period applicable to the substantive claim underlying the request for declaratory relief.

■ Typically, then, the statute of limitations "applicable to ordinary action at law and suits in equity should be applied in like manner to actions for declaratory relief." *In re Downingtown Indus. & Agricultural School,* 172 B.R. 813, 824 (Bankr.E.D.Pa. 1994). Stated differently, the right sued upon—not the form of action—supplies the relevant limitations period. *Town of Orangetown,* 718 F.2d at 42 (If a "claim for declaratory relief could have been resolved through another form of action which has a specific limitations period, the specific period of time will govern."); *Hoagy Wrecker Service,* 776 F.Supp. at 1359 (action for declaratory relief subject to limitations period applicable to corresponding damages action).

Here, each right sued upon in Counts I–III has a discrete limitations period. Each claim plaintiffs raise in Counts I–III could have been vindicated in an action for damages or other relief. Thus, plaintiffs' causes of action are governed by the limitations periods associated with the legal remedy underlying, or corollary to, plaintiffs' declaratory judgment claims. If the underlying action is time-barred, so to is the supervening declaratory judgment claim. *See Cope v. Anderson,* 331 U.S. 461, 463–64, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602 (1947) ("Equity will withhold its relief ... where the applicable statute of limitations would bar the concurrent legal remedy."); *Nemkov v. O'Hare Chicago Corp.,* 592 F.2d 351, 355 (7th Cir.1979) (10b–5 action for recision was untimely be-

cause corollary action for damages was time-barred).

Plaintiffs protest the imposition of any limitations periods, reasoning that they are in an essentially defensive posture and are emphatically not seeking damages. However, statutes of limitation reflect the legislature's considered judgment as to the proper time-frame in which to commence a cause of action. *Resolution Trust Corp. v. Farmer*, 865 F.Supp. 1143, 1152 (E.D.Pa.1994) (Rendell, J.). That judgment cannot be evaded by opportunistic pleading: the substance of the claim matters, not the form of action. To hold otherwise would permit

> a party seeking to vitiate a contract for fraud [to] circumvent the applicable statute of limitations by characterizing his claim as one for a declaratory judgment that the contract is unenforceable at the time he seeks to avoid the application of its terms, [and] the statute of limitations would soon have little meaning.

*Swecker v. Rau*, No. 88–8653, 1990 WL 33944 at *5 (E.D.Pa. March 22, 1990) (Waldman, J.); *Gilbert*, 745 F.Supp. at 47 ("The statute of limitations may not be sidestepped simply by labelling an action one for declaratory or injunctive relief, rather than one for damages.").

Accordingly, this Court will impose the statute of limitations applicable to the "substance" of plaintiffs claims for declaratory relief. *See Town of Orangetown*, 718 F.2d at 42.

## B. Counts I–III Are Untimely; Count IV is Timely

Accepting as true the facts alleged in the Complaint and all reasonable inferences which can be drawn from it, *Rocks*, 868 F.2d at 645, this Court finds that the applicable limitations periods began to run no later than October 11, 1993. On that date, plaintiffs obtained copies of the IRS Closing Agreement which disclosed defendants' fraudulent activities. Compl. ¶¶ 39, 48–9. The Complaint was filed on November 29, 1995.

■ Count I seeks declaratory relief under Section 29(b) of the '34 Act which provides that "contracts made in violation of any provision of this chapter ... shall be void." 15 U.S.C. § 78cc(b). Because this case does not involve broker/dealer fraud, the express limitations period provided in Section 29(b) does not apply. Nonetheless, the Third Circuit has imposed a one/three year limitations period upon non broker/dealer claims brought under Section 29(b). *Gatto v. Meridian Medical Assoc.*, 882 F.2d 840, 842 (3d Cir.1989), *cert. denied*, 493 U.S. 1080, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990) (limitation period runs one year after discovery of fraud or three years after alleged violation occurred). Plaintiffs could have brought an action under Section 29(b) for, *inter alia*, recision, damages, restitution, specific performance. *See* Gruenbaum & Steinberg, *Section 29(b) of the Securities and Exchange Act of 1934: A Viable Remedy Awakened*, 48 Geo.Wash.L.Rev. 1 (1980). *See also Gatto*, 882 F.2d at 842. If plaintiffs had presented such claims, they would have been time-barred as this action was commenced more than one year after plaintiffs' discovery of the facts revealing fraud. Accordingly, plaintiffs' corollary Section 29(b) declaratory judgment claim is also time-barred. Count I must be dismissed. *See, e.g., Nemkov*, 592 F.2d at 355.

■ Count II seeks recision of the investor notes, rescissory damages and a declaration that the notes are void under Section 508 of the PSA. Section 508 provides that "no person may base any suit on any contract in violation of this act." 70 P.S. § 1–508. Damages actions may be maintained against persons who violate various provisions of the PSA. 70 P.S. § 1–501. If plaintiffs had presented such claims, they would be barred by the one/four limitations period provided in Section 504 of the PSA.[2] 70 P.S. § 1–504. Accordingly, the corollary action for declaratory relief (and recision) is also untimely. Count II must be dismissed. *See e.g., Town of Orangetown*, 718 F.2d at 42.

■ Count III, grounded on common law fraudulent inducement, seeks to have the

---

**2.** Plaintiffs concede that if the one/four limitations period of Section 1–504 applies, then their requests for rescissory damages and recision are untimely.

investor notes declared void. In Count III, plaintiffs essentially assert a defense of fraudulent inducement. Of course, such a defense is properly raised only by defendants. Plaintiffs' apparent purpose for asserting such a "defense" here (rather than a claim for damages) is to evade the limitations period applicable to claims for fraud—two years—which applies to any "action to recover damages ... including deceit or fraud." 42 Pa.C.S.A. § 5524(7). Because an action for damages would be time-barred, plaintiffs' corollary declaratory judgment action is also untimely.[3] Count III must be dismissed. *See e.g., Swecker,* 1990 WL 33944 at *5.

■ Count IV requests relief pursuant to the UTPL which is governed by Pennsylvania's six year "catch-all" statute of limitations. *Gabriel v. O'Hara,* 368 Pa.Super. 383, 534 A.2d 488 (1987) (applying 42 Pa.C.S.A. § 5527(6) to the UTPL). This Court rejects defendants' invitation to predict that the Supreme Court of Pennsylvania would disagree with the appellate court's decision in *Gabriel,* and will apply the catch-all limitations period. *See McNasby v. Crown Cork & Seal Co., Inc.,* 888 F.2d 270, 281 (3d Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1783, 108 L.Ed.2d 784 (1990) (holding that Superior Court decisions "'are indicia of how the Pennsylvania Supreme Court would decide' the issue" (quoting *McGowan v. University of Scranton,* 759 F.2d 287, 291 (3rd Cir. 1985))).

Because plaintiffs commenced this action more than six years after the putative fraudulent conduct of defendants, the action would be barred absent application of the "discovery rule" which "tolls the statute of limitation when a plaintiff, despite the exercise of due diligence, is unable to know the existence of the injury and its cause." *Bohus v. Beloff,* 950 F.2d 919, 924 (3d Cir.1991). Plaintiffs have pled facts—when coupled with favorable inferences—sufficient to demonstrate, for the purposes of this Motion, that defendants pre-

vented the discovery of their alleged defalcations through further acts of fraud and concealment up until 1993. Compl. ¶¶ 37, 47, 49. Thus, the statute of limitations was tolled until 1993 and Count IV is therefore timely.

## C. The UTPL Does Not Afford a Private Action for Securities Transactions

■ Defendants offer a number of forceful arguments against the application of the UTPL to the purchase and sale of securities. In particular, defendants urge that the definition of "goods" as used in the act must be interpreted to exclude securities. Their position is buttressed, in part, by the absence of any reported Pennsylvania decisions applying the UTPL to the sale of securities.

Reading the UTPL as a whole and against the backdrop of similar legislation, this Court finds that the UTPL does not apply to the mere purchase of securities.

The UTPL affords a private right of action to any

> person who purchases or leases *goods* or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss ... as a result of the use or employment by any person of a method, act or practice declared unlawful by Section 3 of this act....

73 P.S. 201–9.2 (emphasis added).

In order to bring a private action under Section 201–9.2, plaintiffs must show that they purchased or leased goods or services. Because plaintiffs' purchase of Evergreen units does not involve the provision of a service, plaintiffs may bring an action under Section 201–9.2 if the units are "goods" within the meaning of the act. This Court holds that the UTPL applies to consumer "goods" and does not cover the sale of securities. Accordingly, Count IV must be dismissed.

Unfortunately, the term "goods" is not defined in the UTPL. However, one Pennsyl-

---

3. In a footnote, plaintiffs argue that, in view of the "discovery rule", a jury question exists about when the plaintiffs reasonably should have known of their claims if they had exercised reasonable diligence. The Complaint is devoid of facts concerning plaintiffs' *actual* knowledge, much less the exercise of reasonable diligence.

The Complaint does state that the Closing Agreement received on October 11, 1993 disclosed the fraud. Compl. at ¶¶ 39, 48–9. This Court holds, as a matter of law, that plaintiffs had actual knowledge of defendants' fraud that day. *See O'Brien v. Eli Lilly & Co.,* 668 F.2d 704, 711 (3d Cir.1981).

vania Superior Court referred to Section 201–9.2 as "providing that any person who purchases or leases *consumer goods* or services" may bring a private action. *Alfred M. Lutheran Distributors, Inc. v. Weilersbacher, Inc.*, 437 Pa.Super. 391, 650 A.2d 83, 89 (1994), *app. denied,* 540 Pa. 627, 658 A.2d 791 (1995) (emphasis added). This interpretation, affording persons buying consumer "goods" a private action, is well taken. Significantly, the Pennsylvania legislature deployed the same language in Section 201–9.1 as it did in defining "consumer goods" in Division 9 of Pennsylvania's U.C.C. 13 Pa. C.S.A. § 9102 ("Goods are: (1) 'consumer goods' if they are used or bought for use *primarily for personal, family or household purposes.*" (Emphasis added)). This definition is incorporated and applied in Division 2 of the U.C.C. governing the sale of goods. 13 Pa.C.S.A. § 2103(c). In Division 2, "goods" is defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than ... investment securities." 13 Pa.C.S.A. § 2102. This Court concludes that in framing section 201–9.2, the Pennsylvania Legislature meant to provide a private right of action under UTPL only to purchasers or lessors of consumer goods or services.

It might be argued that this Court is forcing a cropped reading upon the act, one inconsistent with the Pennsylvania Supreme Court's admonition that the UTPL should be interpreted broadly to cover "generally all unfair and deceptive acts or practices in the conduct of trade or commerce." *Denison v. Kelly,* 759 F.Supp. 199, 205 (M.D.Pa.1991) (quoting *Commonwealth by Creamer v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812, 826 (1974)). Nevertheless, this Court concludes that UTPL does not cover sales of securities for two reasons.

First, *Monumental Properties* was decided prior to the amendment of the UTPL in 1976. Section 201–3 was amended and now reads, in pertinent part:

Unfair methods of competition and unfair or deceptive acts of practices in the conduct of any trade or commerce as *defined by subclauses (i) through (xvii) of clause (4) of section 2 of this act ...*

73 P.S. § 201–3 (1976 amendment emphasized). Because the legislature saw fit to set forth precisely those acts and practices in violation of the UTPL, *see* 201–2(4)(i)–(xvii), there is less need for an expansive interpretation. Moreover, the *Monumental Properties* Court was focused on clause (3) of Section 201–2 and its sprawling definition of "trade and commerce" relevant to the Commonwealth's power to initiate suit and not the Section governing private rights of action (which had not yet been added). *See Monumental Properties,* 329 A.2d at 820.

Second, this Court finds that the absence of any reference to securities transactions in the enumerated acts and practices is meaningful when the UTPL is interpreted in the context of the act it was modeled upon, the Federal Trade Commission Act ("FTCA") 15 U.S.C. §§ 41–77.[4] Indeed, the Supreme and appellate courts of Pennsylvania have traditionally looked to FTCA and decisions thereunder for guidance in understanding the UTPL. *See, e.g., Monumental Properties,* 329 A.2d at 818–20; *Commonwealth by Kane v. Flick,* 33 Pa.Cmwlth. 553, 382 A.2d 762, 765–66 (1978). This Court shall do the same.

At least two Circuit Courts of Appeals have considered trade practice and consumer protection acts virtually identical to the UTPL and found, in spite of their broad language, that they do not extend to securities transactions. *Spinner Corp. v. Princeville Development Corp.,* 849 F.2d 388 (9th Cir.1988) (reading Hawaii's law in light of the FTCA); *Lindner v. Durham Hosiery Mills, Inc.,* 761 F.2d 162 (4th Cir.1985) (reading North Carolina's law in light of the FTCA). This Court is persuaded by the reasoning of *Spinner* and *Lindner,* and adopts it here.

Although this Court is mindful of the persuasive reasoning articulated in *Denison v.*

---

**4.** Although two subclauses of Section 201–2 could be read to extend to the sale of securities— subclause (v) (misrepresentation of "the sponsorship, characteristics, ingredients, uses, benefits or quantities" of goods or services) and sub-clause (xvii) (catch all prohibiting "any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding")—such a reading is implausible in light of the decisions interpreting the FTCA.

*Kelly,* 759 F.Supp. 199 (M.D.Pa.1991), this Court predicts that the Pennsylvania Supreme Court would hold that private actions for fraud relating to securities transactions fall without the UTPL's coverage because securities are not "goods" within the meaning of the UTPL.

*Denison* is distinguishable on the grounds that it involved churning, a practice implicating the provision of investment *services,* rather than the sale of "goods." *Id.,* at 202–05. *See Advest, Inc. v. Kirschner,* No. 92–6656, 1994 WL 18592 *1 (E.D.Pa. Jan. 21, 1994) (broker guaranteed a profit on securities transaction but failed to trade the shares and wrote customer a check liquidating account; the check bounced); *McCullough v. Shearson Lehman Brothers, Inc.,* 1988 WL 23008, Nos. 86–2752–2758, at *1 (W.D.Pa. Feb. 18, 1988) (broker churned account by encouraging customer to trade on broker's fraudulent misrepresentations).

Because the term "goods" does not extend to securities, the purchasers of securities are not authorized to bring private actions under Section 201–9.2 of the UTPL. Count IV is dismissed.

An appropriate Order follows.

### ORDER

For the reasons set forth in the foregoing Memorandum, the Motion to Dismiss of defendants William L. Parkinson and Parkinson Pension Trust is **GRANTED.** In light of the disposition of the Parkinson Defendants' Motion, the Motions to Dismiss of defendants Russell M. Dimmick, E. Wayne Pocius, Unique Garden Center Co. and Van Pines of PA are **DENIED AS MOOT.** The Complaint is **DISMISSED** in its entirety.

**IT IS SO ORDERED.**