

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-16-1997

# Algrant v. Evergreen Valley

Precedential or Non-Precedential:

Docket
96-1994

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Algrant v. Evergreen Valley" (1997). *1997 Decisions.* Paper 219.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/219

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 16, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1994

ROLAND R. ALGRANT; THE DOUGLAS F. ALLISON
TRUST; ANCHOR SALES ASSOCIATES, INC; DANIEL
AVERY; JAMES B. BAGLEY; THOMAS S. BORON; MARY
PAT BORON; FRANKLIN EDWARD CATER, JR.; PAUL W.
DLABAL; MICHAEL B. ELEFANTE; HERBERT FISHER;
SUSAN E. HAAR; MARILYN C. HARLIN; STEVEN G.
HOROWITZ; HERBERT J. HOSTETLER; RUDOLPH S.
MAURIZI ESTATE; DR. P. JAGANNADHA REDDY; E.W.
RICHARDON, JR.; PATRICK RUPPERT; SUSAN SLOAN;
NARENDRA K. SOOD; USHA R. SOOD; GEORGE L.
YONANO; LUCRETIA L. YONANO,
          Appellants,

v.

EVERGREEN VALLEY NURSERIES LIMITED
PARTNERSHIP; THE PARKINSON PENSION TRUST; E.
WAYNE POCIUS; RUSSELL M. DIMMICK; VAN PINES OF
PA; WILLIAM L. PARKINSON, DR.; UNIQUE GARDEN
CENTER COMPANY

An Appeal from the United States District Court
for the Eastern District of Pennsylvania
Civil Action No. 95-CV-7224

Argued June 13, 1997

Before: MANSMANN, NYGAARD and ROSENN,
Circuit Judges.

(Opinion Filed September 16, 1997)

        Alexander D. Bono (argued)
        Timothy D. Katsiff
        Blank, Rome, Comisky & McCauley
        1200 Four Penn Center Plaza
        Philadelphia, PA 19103
        Counsel for Appellants

        E. Parry Warner (argued)
        Obermayer, Rebmann, Maxwell &
         Hippell
        One Penn Center, 19th Floor

1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
Counsel for Appellees The Parkinson
 Pension Trust and Dr. William L.
 Parkinson

Joseph A. McGinley (argued)
Lavin, Coleman, O'Neil, Ricci,
 Finarelli & Gray
510 Walnut Street, Suite 1000
Philadelphia, PA 19106
Counsel for Appellees E. Wayne
 Pocius, Russell M. Dimmick,
 Van Pines of Pennsylvania,
 and Unique Garden Center
 Company

OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal raises two important issues of first impression in this court relating to commercial promissory obligations and securities. First, whether the obligors on unmatured promissory notes can obtain declaratory relief against the obligees of those notes and have the notes declared void and unenforceable, when the concurrent legal remedy underlying the request for declaratory relief would be barred by the statute of limitations. Second, whether transactions involving investment securities are covered under section 9.2(a) of the Pennsylvania Unfair Trade

2

Practices and Consumer Protection Law ("UTP/CPL"), which creates a private right of action for consumers injured in the purchase or lease of goods or services. The United States District Court for the Eastern District of Pennsylvania held that the action for declaratory relief was time-barred because the corollary legal actions were based on conduct for which the statute of limitations had run. The court also held that investment securities are not "goods" under the UTP/CPL. The plaintiffs timely appealed. We affirm.

I.

Taking the facts in the light most favorable to the plaintiffs, as did the district court, it appears that in 1986 the defendants organized Evergreen Valley Nurseries Limited Partnership ("Evergreen") to acquire, grow and sell nursery stock. The nursery stock consisted of

approximately 950,000 evergreen trees ("nursery stock") on two leased properties in Pennsylvania, one in Lehigh County (called "Raven Valley") and one in Tioga County (called "the Tioga Farm"). In July 1986, the Parkinson Pension Trust ("Trust"), at the direction of Dr. William L. Parkinson, its sole trustee, purchased the Raven Valley nursery stock from Van Pines of Pennsylvania ("Van Pines") and its general partners for approximately $3.6 million. E. Wayne Pocius and Russell Dimmick are the general partners of Van Pines and are also the sole shareholders of Unique Garden Center ("Unique"), the general partner of Evergreen. The Trust then purchased the Tioga Farm nursery stock from Pocius and Dimmick for approximately $600,000.

Following the acquisition of the nursery stock by the Trust, Evergreen then purchased an undivided 91.2% interest in the Trust's nursery stock for the price of $10.4 million. Evergreen financed the purchase of the nursery stock by a $13.5 million offering of Evergreen limited partnership units, pursuant to a private placement memorandum ("PPM"). A substantial number of these units purchased by the plaintiffs are the genesis of this lawsuit. They paid $150,000 for each unit under the terms of the PPM; the purchase price consisted of a $70,000 cash

3

payment, a $9,500 subscription note due on January 20, 1997, and a $70,500 promissory note ("investor note") payable to the Trust, which became due and payable on July 1, 1996.

The PPM issued by Evergreen did not disclose that Evergreen was to pay the Trust approximately $10.4 million for 91.2% of the nursery stock which the Trust had purchased from Evergreen for about $4.2 million. Thus, it failed to disclose that the purchase price for the interest in land had more than doubled in two months. The PPM did not mention the intricate entanglement of the parties involved in the underlying transactions or the self-dealing in the purchase of the nursery stock.

In 1989, the Internal Revenue Service ("IRS") issued a report concluding that the price of the nursery stock had been significantly overvalued. Although Evergreen initially contested the IRS report, in 1993 Evergreen and the IRS entered into a closing agreement in which Evergreen admitted that the nursery stock had been over-valued by at least $3.2 million. On October 11, 1993, the plaintiffs obtained a copy of the closing agreement between the IRS and Evergreen.

The plaintiffs filed their complaint in the district court on November 16, 1995, raising four claims. The first three claims sought a declaratory judgment that certain Investor Notes were void and unenforceable because they had been procured through fraud: (I) declaratory relief under Section 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. S 78cc(b) (Supp. 1997); (II) declaratory relief under Section 508 of the Pennsylvania Securities Act, 70 Pa. Cons. Stat. S 1-508 (1994); and (III) declaratory relief based on common law fraud. Count IV alleged a violation of the UTP/CPL. The plaintiffs asserted that because of the Trust's expressed intent to collect on the investor notes in July 1996, they were compelled to bring this action to declare the notes void and unenforceable.

The defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief could be granted. The district court dismissed Counts I, II, and III as time-barred and

dismissed Count IV for failing to state a claim on which relief can be granted. The plaintiffs appealed from the dismissal of all four claims.

II.

When reviewing a motion to dismiss under Rule 12(b)(6) on statute of limitations grounds, the court exercises plenary review to determine "whether `the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.' " Cito v. Bridgewater Township Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989) (citations and emphasis omitted). This court exercises plenary review over a district court order dismissing a complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

Because actions for declaratory relief do not have their own statute of limitations, the district court concluded that the plaintiffs' causes of action are governed by the period of limitations applicable to the substantive claims underlying the action, citing Cope v. Anderson, 331 U.S. 461, 463-64 (1947). Thus, the district court held that the statute of limitations to be applied would be the same regardless of the posture of the case, whether offensive or defensive. Accordingly, if the underlying action is time-barred, so is the action for declaratory relief. Judge Huyett, the trial judge, then perceptively determined that Counts I, II, and

III were all barred by the applicable statutes of limitations.

Although this court of appeals has not yet spoken on the issue, a number of other courts have. The First, Sixth, Ninth and Tenth Circuit Courts of Appeals have all held that an action for declaratory relief will be barred to the same extent the applicable statute of limitations bars the concurrent legal remedy. International Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Authority, 108 F.3d 658, 668 (6th Cir. 1997); Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 688-89 (9th Cir. 1993); Gilbert v. City of Cambridge, 932 F.2d 51, 57-58 (1st Cir. 1991); Clulow v. Oklahoma, 700 F.2d 1291, 1302 (10th Cir. 1983)."It is settled, therefore, that where legal and equitable claims

5

coexist, equitable remedies will be withheld if an applicable statute of limitations bars the concurrent legal remedy." Gilbert, 932 F.2d at 57. The Court of Appeals for the Second Circuit, applying state law, has also held that when a "claim for declaratory relief could have been resolved through another form of action which has a specific limitations period, the specific period of time will govern." Town of Orangetown v. Gorsuch, 718 F.2d 29, 41-42 (2d Cir. 1983) (applying New York law). As the district court found in this case, see infra at p. 10-12, the plaintiffs' claims could have been resolved by available timely legal remedies, including an action to rescind under the federal Securities Exchange Act of 1934. See Gatto v. Meridian Medical Associates, Inc., 882 F.2d 840, 842 (3d Cir. 1989).

The aforementioned courts which applied federal law relied on analogous Supreme Court precedent to reach this conclusion. In Russell v. Todd, 309 U.S. 280, 289 (1940), the Court recognized the long-standing doctrine that"when the jurisdiction of the federal court is concurrent with that at law, or the suit is brought in aid of a legal right, equity will withhold its remedy if the legal right is barred by the local statute of limitations." In Cope v. Anderson, 331 U.S. at 464, the Court reiterated this position, stating that "equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy." We have followed this proposition. See Gruca v. United States Steel Corp., 495 F.2d 1252, 1257 (3d Cir. 1974). However, neither the Supreme Court nor this court has addressed the question in the posture in which it is presented in the instant case.

The plaintiffs argue that the statute of limitations does not bar an action for declaratory relief based on a claim that is purely defensive in nature. For this proposition, they

rely heavily on this court's opinion in Silverman v. Eastrich Multiple Investor Fund, L.P., 51 F.3d 28 (3d Cir. 1995). In Silverman, the plaintiff moved in federal court for injunctive and declaratory relief to proclaim a guaranty void after the defendants confessed judgment in state court against the loan guarantors, including the plaintiff. Id. at 30. The defendants moved for dismissal, asserting that the claim was time-barred under the Equal Credit Opportunity Act

6

("ECOA") on which the plaintiff guarantor relied. Id. at 31. The trial court granted the motion. Id. On appeal, we held that when the creditor endeavors to enforce the guaranty the claim could be asserted "as a defense to the state confession of judgment." Id. at 32. In Silverman, the defendants had not only obtained judgment, in contrast to this case where no action has yet begun on the notes, but enforcement of the judgment was imminent. Thus, there the plaintiffs' challenge to the confession of judgment was defensive.

Although Silverman did allow the assertion of a defensive claim after the statute of limitations on the underlying violation had run, the holding was definitely moored to the plaintiff 's defensive position in response to the state confession of judgment. The court stated:

> There are numerous circumstances under which a guarantor may institute an action to declare his or her guaranty void and seek damages or other relief. The expiration of the statute of limitations calculated from the execution of said guaranty may bar the institution of such independent action. No such bar exists, however, to the utilization of such grounds as a defense.

51 F.3d at 32. The court noted that "plaintiff retained the right to assert the violation when efforts were made to collect and enforce the Guaranty." Id. (emphasis added).

In Silverman, the plaintiff had no prior opportunity to respond to the state court confession of judgment, thus limiting her available remedies to the equitable claim she pursued. Id. The court noted that "[the plaintiff's] ECOA claim was raised in direct response to Eastrich's state court confession of judgment, which did not require or provide for an answering pleading. . . . Thus, in essence, plaintiff's alleged ECOA violation is asserted as a defense to the state confession of judgment." Id. Accordingly, despite plaintiffs' assertions in the instant case, Silverman does not stand for the proposition that an independent action offensively for

declaratory relief from potential liability on a note may be brought even though the plaintiff had a legal remedy before the statute of limitations on the concurrent legal remedy

had run. On the contrary, Silverman holds only that where judgment has been confessed, a purported obligor may assert as a defense to its enforcement a statutory violation which would have been time-barred if asserted offensively in an independent action.1 In this instant case, however, the creditors have taken no legal action to collect on the Investors Notes, plaintiffs have no voidable judgment, and recoupment is not now before us.

The Supreme Court set forth in Bull v. United States, 295 U.S. 247 (1935), a rationale similar to Silverman. Bull, a partner in a ship-brokering business, died in February and his estate continued to receive the profits of his partnership for one year after his death. Id. at 251. His estate valued the partnership only by the profits received up to Bull's death. The United States, however, declared all profits received by the estate to be corpus under the estate tax and taxed the property accordingly. The estate did not challenge the assessment at the time. Id. at 251-52. Four years later, the United States notified the estate that the same property was income and taxable as such. Id. at 252. The estate then pursued the administrative remedies to challenge the double taxation of the same property. When the final administrative appeal had been rejected, the estate brought an action in the Court of Claims, seeking a refund of the amount paid as income tax or, in the alternative, a refund for the tax paid on the same property when the estate tax was paid. Id. at 253. The Court of Claims found that the statute of limitations barred the second ground for relief, seeking correction of the estate tax. Id. at 254.

_____

1. The other cases cited by the plaintiffs are equally distinguishable on the same grounds. See Sony Electronics v. Putnam, 906 F. Supp. 228 (D.N.J. 1995) (party could bring time-barred claim as defense to action to collect on guaranty but could not assert claim as counterclaim seeking monetary damages); FDIC v. Medmark, Inc., 897 F. Supp. 511 (D. Kan. 1995) (party could assert time-barred claim defensively in action by lender to collect on guaranty); Integra Bank/Pittsburgh v. Freeman, 839 F. Supp. 326 (E.D. Pa. 1993) (party could assert time-barred claim by way of recoupment in action by lender to collect on guaranty); Mellon Bank, N.A. v. Pasqualis-Politi, 800 F. Supp. 1297 (W.D. Pa. 1992) (party could assert defense which could not be asserted affirmatively because of the bar of the statute of limitations when lender brought action to collect on mortgage and notes).

The Court in Bull first determined that the portion of the profits paid the estate was income, not corpus, and thus wrongly subjected to the estate tax as such. Id. at 257. The Court then held that the claim for refund of the estate tax was not barred by the statute of limitations. The Court noted that, prior to the institution of proceedings to collect income tax on the same property, the estate had no grounds to seek a refund of the money as a product of double taxation. Additionally, the Court noted that, under the law, "[p]ayment precedes defense" when challenging a tax assessment. Id. at 260. Therefore, the estate was entitled to raise the claim only as a defense after paying the income tax on the same profits.

> If the claim for income tax deficiency had been the subject of a suit, any counter demand for recoupment of the overpayment of estate tax could have been asserted by way of defense and credit obtained notwithstanding the statute of limitations barred an independent suit against the Government therefor. This is because recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely.

Bull, 295 U.S. at 262. The Court then determined that "[the Government] has given [the estate] a right of credit or refund, which though he could not assert it in an action brought by him in 1930, had accrued and was available to him since it was actionable and not barred in 1925, when the Government proceeded against him for the collection of income tax. The pleading was sufficient to put in issue the right to recoupment." Id. at 263. Thus, the estate's claim was not barred by the statute of limitations. Id.

Bull, like Silverman, recognizes that a claim can be raised defensively even if it would be barred if brought independently. Like Silverman, the plaintiff in Bull had no opportunity to present the claim as a defense to the tax assessment, having been summarily assessed with the tax and later compelled to pursue administrative remedies before seeking legal adjudication of the right to refund. Therefore, despite the unusual posture of the case, the

claim was not time-barred because the Court considered it

as a defense to the judgment obtained against the estate administratively.2 The crux of the decision was the existence of a claim against the estate. In the present matter, the plaintiffs could have asserted their claims independently by an action to rescind or other legal options within the time allowed by the statute of limitations. They chose not to do so. Therefore, their remedy now is to wait until the Trust seeks to collect on the notes and then assert the claims defensively. However, in the absence of any action taken against them to collect the debt, plaintiffs are not entitled to bring an independent action essentially seeking a recision by posturing it as defensive.

Moreover, the plaintiffs' action before us is not saved by the doctrine of recoupment. Under Pennsylvania law, "the defense asserted by way of recoupment must be related to the nature of the demand brought by the plaintiff." Mellon Bank, N.A. v. Pasqualis-Politi, 800 F. Supp. 1297, 1301 (W.D. Pa. 1992) (citing Porter v. Levering, 199 A. 482, 484 (1938)). As the Pennsylvania Supreme Court noted in Household Consumer Discount Co. v. Vespaziani, 415 A.2d 689, 694 (Pa. 1980), recoupment is not a set-off "because it is not in the nature of a cross demand, but rather it lessens or defeats any recovery by the plaintiff." Recoupment, then, is a defensive claim which can only be asserted in response to an independent action instituted by another party; recoupment does not permit the party asserting it to present otherwise time-barred claims simply by creative pleading in an independent proceeding brought by it.

The dissent, in concluding that this declaratory judgment action may be maintained despite the long lapse of time since the alleged frauds were committed, focuses on the

_____

2. In United States v. Dalm, 494 U.S. 596, 608 (1990), the Supreme Court stated that "our decisions in Bull and [Stone v. White, 301 U.S. 532 (1937)] stand only for the proposition that a party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time-barred tax claim relating to the same transaction." Therefore, the Supreme Court has very specifically limited the holding of Bull, and the holding is not applicable
to the situation sub judice.

10

"defendants' expected enforcement of a future obligation," dis. op. at 25, rather than on the acts of fraud which is the basis of plaintiffs' present claims. The dissent asserts that the "substantive claim Algrant seeks to vindicate in

pursuing Counts I through III is the claim that Algrant is not liable for future obligations under the Investors Notes." Dis. op. at 21. The plaintiffs, however, allege that the Investor Notes were obtained by fraud and specific intent to deceive and "are void and unenforceable in their entirety because they were induced by fraud" and were made in violation of the 1934 Federal Securities Exchange Act, the Pennsylvania Securities Act, and Pennsylvania common law. The potential collection on the notes is at this time only a possibility, not an action in court. However, the door has been closed to the right to rescind the notes, and other legal options for relief under the federal and state statutes, and Pennsylvania common law which the plaintiffs cannot now open at this late date by an offensive independent action. As the Court of Appeals for the Second Circuit stated, if "a claim for declaratory relief could have been resolved through another form of action which has a specific limitations period, the specific period of time will govern." Georgetown v. Gorsuch, 718 F.2d 29, 42 (2d Cir.) cert. denied 465 U.S. 1099 (1984).

The theory of plaintiffs' case, and with which the dissent agrees, is that they are entitled to declaratory relief now and need not wait until action is taken to collect on the notes, because they would raise the fraud defense in such an event. The court in Gilbert responded to a similar argument in these words:

> We find this idea, albeit precocious, to be equally unavailing. The temporal bar cannot be sidestepped merely by asserting that the appellants' declaratory judgment suit was brought to establish defenses against the rainy day, in the future, when the Ordinance might be enforced against them . . . . Such a smoke-and-mirrors approach would place far too much priority on theoretical possibilities at the expense of practical actualities, requiring us, in the last analysis, to treat aggressor as defender, petitioner as respondent. In effect, it would serve to make justiciable

11

> claims which were simultaneously stale (i.e., time-barred as to the actual permit denial) and unripe (i.e., not yet mature as to any potential enforcement action). The decided cases are to the contrary.

932 F.2d at 58.

We, therefore, hold that when plaintiffs' claims are barred by a statute of limitations applicable to a concurrent legal remedy, then a court will withhold declaratory judgment

relief in an independent suit essentially predicated upon the same cause of action. Otherwise, the statute of limitations can be circumvented merely by "[d]raping their claim in the raiment of the Declaratory Judgment Act." Id. at 58. Accordingly, we turn to each of the plaintiffs' claims to determine whether the claim would be barred by the applicable statute of limitations.

A.

The district court dismissed Count I as time-barred. Count I sought declaratory relief that, pursuant to S 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. S 78cc(b), the promissory investor notes were void and unenforceable because they were obtained by fraud in violation of federal securities laws. Under the statute of limitations actually set forth in S 29(b) an action pursuant to that section is barred one year from the time of discovery of the violation of the federal securities laws and three years from the time the violation occurred. Gatto v. Meridian Medical Assoc., Inc., 882 F.2d at 842. The district court held that this claim, brought more than two years after the discovery of the fraud and almost nine years after the transaction, was barred by the statute of limitations under S 29(b). Applying the statute of limitations from the corollary action to the plaintiffs' claim for declaratory relief, we see no error in the district court's dismissal of the claim as time-barred.

B.

The district court also dismissed Count II as time-barred. Count II sought a declaratory judgment that, pursuant to section 508 of the Pennsylvania Securities Act ("PSA"), 70

12

Pa. Cons. Stat. S 1-508, the investor notes were void and unenforceable because they were induced by fraud in violation of Pennsylvania securities law. The district court concluded that the applicable statute of limitations was the one/four year statute of limitations, pursuant to 70 Pa. Cons. Stat. S 1-504. Section 504(a) states:

> No action shall be maintained to enforce any liability under section 501 (or section 503 in so far as it relates to that section) unless brought before the expiration of four years after the act or transaction constituting the violation or the expiration of one year after the plaintiff receives actual notice or upon the exercise of reasonable diligence should have known of the facts constituting the violation, whichever shall first expire.

70 Pa. Cons. Stat. S 1-504. Plaintiffs challenge application of this statute of limitations to their claim, asserting that the statute of limitations set forth in S 504 expressly does not apply to claims brought pursuant to S 508.

Section 508 of the PSA provides that:

> No person may base any suit on any contract in violation of this act or any rule or order hereunder if he has made or engaged in the performance of such contract or has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation.

70 Pa. Cons. Stat. S 1-508. The plaintiffs have premised their claim for declaratory relief under this section of the PSA. This section, however, does not create an affirmative cause of action on which the plaintiffs can seek relief.

Section 506 puts clear limitations on a party's ability to assert a right of action under the PSA. According to that provision:

> Except as explicitly provided in this act, no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this act or any rule or order hereunder. Nothing in this act shall limit any

13

> liability which may exist by virtue of any other statute or under common law if this act were not in effect.

70 Pa. Cons. Stat. S 1-506. Section 508 does not explicitly provide for civil liability; rather, it simply creates a defense to any suit brought on a contract that violates the PSA. Thus, the plaintiffs could only have brought their action under S 501, which is expressly subject to the one year/four year statute of limitations of S 504. Therefore, plaintiffs' action for declaratory relief brought two years after they learned of the violation and over nine years after the allegedly fraudulent transaction, is barred by the statute of limitations applicable to the corollary legal claim. Judge Huyett, therefore, did not err in dismissing Count II as time-barred.3

C.

The district court dismissed Count III as time-barred. Count III sought a declaratory judgment that, pursuant to

Pennsylvania common law, the investor notes are void and unenforceable as they were obtained by fraud in violation of Pennsylvania tort law. The statute of limitations in Pennsylvania is two years for "[a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action sounding in trespass, including deceit or fraud." 42 Pa. Cons. Stat. S 5524(7). The plaintiffs concede that they knew of the fraud by October 11, 1993; the complaint was notfiled until November, 1995. An independent action clearly would be barred by the two-year statute of limitations governing fraud actions. Accordingly, the action for declaratory relief here is governed by the applicable statute of limitations on the concurrent legal remedy. We, therefore, see no error by the district court's dismissal of Count III as time-barred.

_____

3. An action brought in equity is governed by the doctrine of laches. See Russell v. Todd, 309 U.S. 280, 287 (1940). Therefore, had the plaintiffs sought equitable relief, or if the corollary action to their declaratory judgment suit is viewed as an action in equity, the claim would still be time-barred by the doctrine of laches.

14

III.

The district court also dismissed Count IV of plaintiffs' claim which sought relief under the UTP/CPL, 73 P.S. S S 201-1 to 201-9.2. Specifically, the plaintiffs sought relief under S 201-9.2, which provides a private right of action for:

> [A]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss . . . as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act.

The trial court stated that "[i]n order to bring a private action under Section 201-9.2, plaintiffs must show that they purchased or leased goods or services. Because plaintiffs' purchase of the Evergreen units does not involve the provision of a service, plaintiffs may bring an action under Section 201-9.2 if the units are "goods" within the meaning of the act." Algrant v. Evergreen Valley Nurseries Ltd. Partnership, 941 F. Supp. 495, 499 (E.D. Pa. 1996). The court then held that investment securities were neither goods nor services under its construction of Pennsylvania law. The court was also persuaded that the PSA covered

conduct and practices relating to securities transactions to the exclusion of the Pennsylvania consumer protection laws, and that plaintiffs had failed to state a cause of action for which relief could be granted. Accordingly, the district court then dismissed Count IV.

The district court examined the UTP/CPL in light the Federal Trade Commission Act ("FCTA"), 15 U.S.C. S S 41-47, as well as cases involving other state's unfair trade practices statutes with identical language. Pennsylvania courts have looked to the FCTA for guidance in construing the UTP/CPL. See Commonwealth v. Monumental Properties, Inc., 329 A.2d 812, 818-20 (Pa. 1974). The FCTA has not been applied to securities transactions. As the district court observed, courts construing state law in light of the FTCA have found, that despite its broad language and remedial scope, the FTCA and similar state consumer protections laws do not extend to investment securities. See Spinner

15

Corp. v. Princeville Development Corp., 849 F.2d 388, 393 (9th Cir. 1988); Stephenson v. Paine Webber Jackson & Curtis, Inc., 839 F.2d 1095, 1101 (5th Cir. 1988); Lindner v. Durham Hosiery Mills, Inc., 761 F.2d 162, 167 (4th Cir. 1985). In each of the foregoing cases, the courts noted that the state legislatures had enacted extensive laws regulating the sale of the securities. Giving plaintiffs a remedy under both consumer protection laws and securities laws would be "inconsistent with a coherent legislative intent." Spinner Corp., 849 F.2d at 391. Pennsylvania also extensively regulates securities transactions pursuant to the Pennsylvania Securities Act of 1972, 70 P.S. S S 1-101 to 1-704 (1994 and Supp. 1997), and provides remedies under that Act. We also believe that allowing plaintiffs to obtain remedies under both the UTP/CPL and the Securities Act is not consistent with coherent legislative intent.

We turn to the question of whether an investment security is a "good" under the UTP/CPL. Although Denison acknowledged that reference to the FTCA for aid in interpreting the UTP/CPL is for guidance only and is not controlling, 759 F. Supp. at 205, the exclusion of securities from the definition of goods under the FTCA is consistent with Pennsylvania's rules of statutory construction. Thus we predict, as did the district court, that the Pennsylvania Supreme Court would hold that investment securities are not goods under the UTP/CPL and therefore the UTP/CPL does not provide a cause of action for a party alleging fraud in the securities themselves. Accordingly, we conclude that the district court did not err in dismissing Count IV of the plaintiff 's complaint for failure to state a cause of action

upon which relief could be granted.

We find no Pennsylvania case law addressing this issue. The plaintiffs argue that those federal courts that have confronted this issue have split on whether the UTP/CPL covers the sales of investment securities, while the majority holding that the UTP/CPL does cover these transactions.[4]

_____

4. See Lebovic v. Nigro, Civ. No. 96-319, 1996 WL 179982, at *2 (E.D. Pa. Apr. 15, 1996); S. Kane & Son Profit Sharing Trust v. Marine Midland Bank, Civ. No. 95-7058, 1996 WL 200603, at *3 (E.D. Pa. Apr. 25, 1996); Advest Inc. v. Kirschner, Civ. No. 92-6656, 1994 WL 18592, at *2 (E.D. Pa. Jan. 21, 1994); Denison v. Kelly, 759 F. Supp. 199, 202-05 (M.D. Pa. 1991); McCullough v. Shearson Lehman Bros. Inc., 1988 WL 23008, *4 (W.D. Pa. Feb. 18, 1988).

16

Only one trial court, in addition to the district court in this case, has held that it does not. See Klein v. Opp, 944 F. Supp. 396, 398 (E.D. Pa. 1996).

A closer analysis of the cases relied upon by the plaintiffs show that they are distinguishable; most of the cases involved situations in which the alleged violation of the UTP/CPL was committed by a brokerage house customarily selling the securities of third parties. In this case, the plaintiffs have alleged that the fraud was in the valuation fixed by the issuer of the investment securities themselves and misrepresentations the issuer made concerning these securities. Plaintiffs have not alleged any fraudulent conduct in the actual sale of the securities.

Denison, 759 F. Supp. at 199, the only case providing an analysis and reasoning for its conclusion that the UTP/CPL sale covers the investment securities, addressed a factually different scenario. There, the fraud alleged was in the actual sale of the securities from a brokerage house to the plaintiffs. In Denison, the plaintiffs alleged that the defendants "had churned their account and had purchased investments inappropriate to the plaintiffs' stated desire for long term growth and appreciation." 759 F. Supp. at 200. Therefore, the alleged fraudulent conduct was in the "services" provided by the brokerage house, which is covered by the UTP/CPL. The plaintiffs did not allege any fraud related to the securities themselves.

The other cases holding that the UTP/CPL covers the purchase of securities also deal specifically with the transaction, and not with the securities themselves. See S. Kane & Son, 1996 WL 200603, at *3 (claim that seller of

investment used money in regular operations rather than in
escrow account as promised and subsequently went
bankrupt); Advest Inc., 1994 WL 18592, at *2 (actionable
conduct was broker's fraudulent assurance that shares
could be sold at profit); McCullough, 1988 WL 23008, at *4
(claims allege that broker misled purchaser by providing
inaccurate information and advice regarding securities).5

_____

5. Two of the cases cited by the plaintiffs for the proposition that the
UTP/CPL covers securities transactions assumed this for purposes of

17

These cases all involve the provision of services and thus
are squarely within the protections of the UTP/CPL.

The only case which cannot be so readily distinguished is
Lebovic v. Nigro, 1996 WL 179982, *2 (E.D. Pa. Apr. 15,
1996). In Lebovic, the plaintiff orally agreed to form a new
corporation with the defendant and bought "shares" in this
new corporation. The defendant allegedly never performed
his part of the oral bargain and converted the money
plaintiff paid for these shares in the new corporation to his
own personal use. 1996 WL 179982 at *1. The court,
without analysis, held that the UTP/CPL applied to the
purchase of securities, simply citing S. Kane & Sons,
Denison, & McCullough. Id. at *2. The court then dismissed
the claim, however, holding that the plaintiff, who had
purchased the stock as part of an ownership agreement,
was not a consumer within the contemplation of the
UTP/CPL. Id. at *3. Thus, this case offers little support for
the proposition that the UTP/CPL covers investment
securities as "goods" under S 9.2. In fact, it could
contemplate a ruling that the plaintiffs, purchasers of
interests in a limited partnership, are not "consumers"
protected under the UTP/CPL.

The difficulty arises because the term "goods" is not
expressly defined in the UTP/CPL. Pennsylvania law,
however, has established rules of statutory construction to
be employed when defining a term not defined in the
statute itself. There are a number of approved ways of
construing terms that are not otherwise defined in the
statute. Generally, "[w]ords and phrases shall be construed
according to their common and approved usage." 1 Pa.
Cons. Stat. S 1903(a). According to the dictionary, the term
"goods" generally does not include securities. See Webster's
Seventh New Collegiate Dictionary 360 (1969). Additionally,
words can be construed by reference to other statutes. 1

_____

reaching other issues and did not directly reach that matter. See Klein v. Boyd, 949 F. Supp. 280, 285 (E.D. Pa. 1996) (assuming UTP/CPL covers sale of securities to decide privity issue); Rosen v. Fidelity Fixed
Income Trust, 169 F.R.D. 295 (E.D. Pa. 1995) (assuming UTP/CPL covers sale of securities to determine class certification issue). Thus, these cases are not persuasive on the critical issue before us.

Pa. Cons. Stat. SS 1921(c), 1932. The district court did just that, comparing the term "goods" under the UTP/CPL with the term "goods" under the Uniform Commercial Code.

As the district court noted, the Pennsylvania legislature used the same language in section 201-9.2 of the UTP/CPL as it did in defining "consumer goods" in Pennsylvania's Uniform Commercial Code. Compare 13 Pa. Cons. Stat. S 9109 ("Goods are: (1) `Consumer goods' if they are used or bought for use primarily for personal, family or household purposes.") with 73 Pa. Cons. Stat. S 201-9.2 (providing right of action for person buying or leasing "goods or services primarily for personal, family or household purposes"). Under the UCC provision dealing with sales, "goods" is defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than . . . investment securities." 13 Pa.Cons. Stat. S 2105(a). In fact, the Pennsylvania UCC contains a separate provision dealing solely with investment securities. See 13 Pa. Cons. Stat. S 8101 et seq. Thus, by comparing this statute to the UCC, the district court determined that the definition of goods under the UTP/CPL does not include investment securities.

IV.

Accordingly, the district court committed no error in its order dismissing the plaintiffs' complaint. The dismissal of the action, however, is without prejudice to the plaintiffs' right to invoke the claims they have raised in this proceeding as defenses to any suit brought by the Trust to collect upon the notes referred to in this action.

Each side to bear its own costs.

MANSMANN, J., dissenting.

I believe that a party may bring a defensive declaratory

judgment action to assert his non-liability for future obligations under a written instrument so long as the jurisdictional requirements of the Declaratory Judgment Act are satisfied, even when the party's unpursued cause of action for damages based on the same instrument is time-barred. I also believe that purchasers of investment securities may seek the protection of the Pennsylvania Unfair Trade Practices and Consumer Protection Law so long as the securities are purchased primarily for personal purposes. I respectfully dissent.

I.

The primary purpose of the Declaratory Judgment Act is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued." Travelers Ins. Co. v. Davis, 490 F.2d 536, 543 (3d Cir. 1974) (quoting E. Edelmann & Co. v. Triple-A Specialty Co., 88 F.2d 852, 854 (7th Cir. 1937)); accord Cunningham Bros., Inc. v. Bail, 407 F.2d 1165, 1167-68 (7th Cir. 1969); Luckenbach Steamship Co. v. United States, 312 F.2d 545, 548 (2d Cir. 1963). The Act allows "prospective defendants to sue to establish their nonliability." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504 (1959).

Bearing in mind the remedial character and legislative purpose of the Declaratory Judgment Act, we have repeatedly emphasized that the Act should have a liberal interpretation. Exxon Corp. v. Federal Trade Comm'n, 588 F.2d 895, 900 (3d Cir. 1978); Simmons Aerocessories v. Elastic Stop Nut Corp. of Am., 257 F.2d 485, 489 (3d Cir. 1958); Aralac, Inc. v. Hat Corp. of Am., 166 F.2d 286, 291 (3d Cir. 1948). Indeed, federal courts' jurisdiction over declaratory judgment actions are limited by just two primary considerations: the action must present a case or

20

controversy and it must be ripe for disposition. Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1153-54 (3d Cir. 1995).1

The district court and the majority do not contend that Algrant failed to satisfy the "case or controversy" or "ripeness" requirements under the Act. Rather, the majority agrees with the district court that Algrant's first three causes of action are barred by the statute of limitations.

Actions for declaratory relief do not have their own statute of limitations. See Luckenbach, 312 F.2d at 548 ("Limitations statutes do not apply to declaratory judgments

as such. . . . There are no statutes which provide that declaratory relief will be barred after a certain period of time."). Rather, since "[d]eclaratory relief is a mere procedural device by which various types of substantive claims may be vindicated," it is the substance of the right sued on, and not the remedy invoked, that governs the applicable limitations period. Id. at 548 & n.2. As the district court observed, "the declaratory judgment action must be brought within the limitations period applicable to the substantive claim underlying the request for declaratory relief." Algrant v. Evergreen Valley Nurseries Ltd. Partnership, 941 F. Supp. 495, 497 (E.D. Pa. 1996).

The substantive claim Algrant seeks to vindicate in pursuing Counts I through III is the claim that Algrant is not liable for future obligations under the Investor Notes. Algrant invokes section 29 of the Securities and Exchange

_____

1. To satisfy the "case or controversy" requirement, a declaratory judgment action must present a legal controversy (1) that is real and not hypothetical, (2) that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) that sharpens the issues for judicial resolution. Obusek, 72 F.3d at 1154 (citing Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 410 (3d Cir. 1992)).

To satisfy the "ripeness" requirement, a plaintiff in a declaratory judgment action must demonstrate (1) that the probability of future harm is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, (2) that the legal status of the parties will be changed by the declaration, and (3) that the declaratory judgment will have utility (i.e., that it will be of some practical help to the parties). Id. at 1154-55.

21

Act of 1934, section 508 of the Pennsylvania Securities Act, and common law fraudulent inducement for the sole purpose of establishing his non-liability under the Notes. Algrant does not seek damages pursuant to these laws; rather, Algrant relies on these laws to establish a defense to the defendants' anticipated claims to enforce the Notes.

Since the substantive claim underlying the declaratory judgment action is Algrant's defense to the defendants' potential claim under the Notes, the declaratory judgment action is not time-barred until the defendants' claim is time-barred. As the Court of Appeals for the Second Circuit held in Luckenbach:

        Non-liability is the negative of the claim or cause of

action with respect to which the declaration is sought. For purposes of the statute of limitations non-liability is inextricably linked with that cause of action. So long as the claim can be made, its negative can be asserted. When the claim itself has been barred, a declaration of non-liability is also barred . . . .

Luckenbach, 312 F.2d at 549; see also United States v. Western Pac. R.R. Co., 352 U.S. 59, 72 (1956) (statutes of limitations do not apply to defenses).

The majority perceives Counts I through III quite differently. The majority focuses on the limitations periods governing offensive actions for damages brought under the laws which Algrant cites to establish a defense. The majority reasons that, since an independent cause of action for damages under these laws would have been barred, so too must a defensive declaratory judgment action which invokes these laws be barred. I believe that the majority misconstrues the nature of Algrant's claim. The substantive claim underlying Algrant's request for declaratory relief is not the claim for damages Algrant elected not to pursue; Algrant does not seek a coercive judgment. Rather, the substantive claim is the defendants' potential action against Algrant to enforce the Notes. Counts I through III do not exist for the purpose of establishing that the defendants committed fraud; rather, they exist to establish that Algrant is not liable under the Notes. Cf. Luckenbach, 312 F.2d at 548 (declaratory judgment action may proceed when

22

plaintiff seeks "only a declaration of non-liability" and not a time-barred "coercive judgment").

The majority concludes that Algrant may not assert the defenses articulated in Counts I through III until the defendants seek enforcement of the Notes. Under the majority's reasoning, Algrant's claims are both stale and unripe; they were brought both too late and too soon. Given that the jurisdictional requirements of the Declaratory Judgment Act are satisfied now, it makes little sense to force Algrant to wait (while potential liability looms) until the defendants seek judicial enforcement of the Notes before asserting the very defenses which he properly asserts in this action. As a prospective defendant seeking to obtain an early adjudication of an actual controversy so as to avoid the accrual of avoidable damages, Algrant is exactly the type of person the Declaratory Judgment Act was intended to assist.

The majority improperly links the timeliness of defensive

declaratory judgment actions with the timeliness of other remedies that might have been available had Algrant chosen to pursue them. The Declaratory Judgment Act provides that courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. S 2201(a) (emphasis supplied). Indeed, when coercive relief is deemed unavailable, the court may, "if it serves a useful purpose, grant instead a declaration of rights." Fed. R. Civ. P. 57 advisory committee's note. Thus, the availability of a declaratory judgment remedy is not dependent on the existence or timeliness of an alternative, coercive remedy.

Written instruments "may be construed before or after breach at the petition of a properly interested party." Id. Under the majority's reasoning, however, written instruments may only be construed (1) after breach, in litigation of an action on that breach or (2) sufficiently before breach so as to coincide with a timely cause of action for damages based on conduct which may also render the written instrument unenforceable. During these periods, the declaratory judgment plaintiff ordinarily has other options (e.g., asserting a defense, bringing a claim for damages), and the declaratory judgment action often

23

becomes redundant. The majority prevents an individual from seeking a declaratory judgment when it would be most useful -- during an actual controversy, when the party threatened with liability desires an early adjudication to avoid the unnecessary accrual of damages without waiting until his adversary should see fit to begin an action after the damage has accrued. See Saum v. Widnall, 912 F. Supp. 1384, 1394 (D. Colo. 1996).

In Silverman v. Eastrich Multiple Investor Fund, L.P., 51 F.3d 28 (3d Cir. 1995), the plaintiff brought an action seeking a declaration that the requirement that she guarantee a loan for the benefit of her spouse was in violation of the Equal Credit Opportunity Act. We held that even if the plaintiff's "right to initiate an action for damages based upon such alleged violations is barred by the statute of limitations, no such bar exists to asserting such violation as a defense to efforts to collect on said guaranty." Id. at 29 (emphasis supplied). We permitted the plaintiff's declaratory judgment action to go forward because it was defensive in nature. The majority reads Silverman narrowly, concluding that the plaintiff 's declaratory judgment action was only permitted because the action was brought in response to the defendant's state court confession of judgment.

I interpret Silverman more broadly, to permit a party to bring a defensive declaratory judgment action (i.e., to thwart "efforts" to enforce a written instrument), even when the action raises issues that would be time-barred if brought offensively (i.e., to obtain damages). Id. at 32. The Declaratory Judgment Act permits parties to bring an action to establish a defense even before a controversy has reached the stage at which the declaratory judgment defendant may sue for coercive relief. By forcing Algrant to wait until the defendants bring suit on the Notes, the majority has undermined the primary purpose of the Act.

The cases from our sister courts of appeals cited by the majority are distinguishable. In Levald, Inc. v. City of Palm Desert, 998 F.2d 680 (9th Cir. 1993), for example, the plaintiff's challenge to an ordinance was time-barred because the plaintiff suffered a single harm, measurable and compensable when the ordinance was passed years

24

before. Id. at 688. The declaratory judgment action was no different in substance from the time-barred action for damages for the past injury. See also International Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth., 108 F.3d 658, 667-68 (6th Cir. 1997) (plaintiff 's claim for declaratory relief was tied to time-barred substantive claims for damages arising from prior breach of collective bargaining agreement; court was not faced with actual controversy about anticipated future breach); Clulow v. Oklahoma, 700 F.2d 1291, 1293-95, 1302-03 (10th Cir. 1983) (declaratory judgment plaintiff could not vindicate past alleged wrongs in claims that were inextricably linked to time-barred causes of action for damages). In contrast, Algrant does not seek to vindicate prior wrongs in an action indistinguishable from a time-barred offensive action for damages. Algrant merely seeks a declaration about a future obligation.

In Gilbert v. City of Cambridge, 932 F.2d 51 (1st Cir. 1991), also cited by the majority, the plaintiffs' "as-applied" challenge to an ordinance was barred by the statute of limitations because the injury was inflicted at the time the ordinance was applied; the substance of the claim was no different from the time-barred claim for damages. Id. at 57-58. Importantly, the court also noted that the declaratory judgment action was not yet "mature as to any potential enforcement action." Id. at 58 (emphasis supplied). The fact that "potential" enforcement actions remained mere "theoretical possibilities" rendered the plaintiffs' declaratory judgment action unripe. Id. In contrast, Algrant's

declaratory judgment action is ripe; there is a present controversy about the defendants' expected enforcement of a future obligation.2

_____

2. The majority also cites Town of Orangetown v. Gorsuch, 718 F.2d 29 (2d Cir. 1983), but that case was decided under New York law. Id. at 41-42. Under Pennsylvania law, a party may pursue a declaratory judgment action to ascertain future obligations of the parties to a contract even though a damages claim for breach of contract is time-barred. Wagner v. Apollo Gas Co., 582 A.2d 364, 365-66 (Pa. Super. Ct. 1990). In Pennsylvania, a four-year "catch all" statute of limitations applies to certain declaratory judgment actions, see 42 Pa. Cons. Stat. Ann. S 5525(8), but the statute does not begin to run until there exists an " `actual controversy' indicating immediate and inevitable litigation, and a direct, substantial and present interest." Wagner, 582 A.2d at 366.

25

II.

The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTP/CPL"), Pa. Stat. Ann. tit. 73, S 201-1 et seq., provides that any person who purchases "goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" may bring a private action for damages. Id. S 201-9.2(a). The legislative intent in enacting the UTP/CPL was "to enhance the protection of the public from unfair or deceptive business practices. . . . The central underlying intent was fraud prevention, and the act must be construed liberally to effectuate that remedial intent." Valley Forge Towers S. Condominium v. Ron-Ike Foam Insulators, Inc., 574 A.2d 641, 644 (Pa. Super. Ct. 1990), aff 'd, 605 A.2d 798 (Pa. 1992); accord Commonwealth v. Monumental Properties, Inc., 329 A.2d 812, 815-17 (Pa. 1974) (Consumer Protection Law is to be construed liberally to effect object of preventing unfair or deceptive practices).

When determining the scope of the UTP/CPL, I note that the Act is not concerned with the type of product purchased; instead, it is concerned with the purpose of the purchase. "The purpose of the purchase, and not the type of product purchased, controls." Valley Forge, 574 A.2d at 648 (emphasis in original). So long as the product (whatever its type) is purchased "primarily for personal, family or household purposes," the purchase is protected by the Act. Thus, in deciding whether the Evergreen units purchased by Algrant come within the protection of the UTP/CPL, we should focus on the purpose of the purchase.

There is no indication that Algrant purchased the

Evergreen units as a limited partner for a business purpose. Rather, the securities were purchased as personal investments. Due to the passive nature of the typical limited partnership arrangement, an individual who invests in a limited partnership is not characterized as engaging in business activity. See Freedman v. Tax Review Bd. of City of Phila., 243 A.2d 130, 133-35 (Pa. Super. Ct. 1968), aff'd, 258 A.2d 323 (Pa. 1969). Algrant was a passive limited partner who did not participate in the business in any way. Since Algrant purchased the Evergreen units for a personal

26

purpose, he was not engaged in a business activity and the purchase is protected by the UTP/CPL.

The majority focuses on the term "goods" and notes that investment securities are excluded from the definition of "goods" under the Pennsylvania Uniform Commercial Code ("UCC") provision dealing with sales. 13 Pa. Cons. Stat. Ann. S 2105(a). In so doing, the majority reads an exception into the UTP/CPL that is not present. Indeed, while the UCC may limit its scope by expressly excluding investment securities from its definition of "goods," Ifind it telling that the UTP/CPL does not contain such an exclusion. Cf. Monumental Properties, 329 A.2d at 824 (cautioning courts not to "woodenly apply" definition in UCC, which furthers commercial objectives, to the Consumer Protection Law, which furthers consumer objectives; to do so might"defeat the [Consumer] Law's remedial objects").

In Monumental Properties, the court emphasized its intention to interpret the Consumer Protection Law broadly:

> There is no indication of an intent to exclude a class or classes of transactions from the ambit of the Consumer Protection Law. When the Legislature deemed it necessary to make an exception from the Law's scope, it did so in clear language.

329 A.2d at 815 n.5. The UTP/CPL contains no "clear language" excluding the purchase of personal investment securities from the protection of the law. The legislature could easily include such language, as it did for broadcasters, printers and publishers. Pa. Stat. Ann. tit. 73, S 201-3. Until the legislature chooses to create a "securities exception" to the UTP/CPL, the courts should not recognize one.

For the foregoing reasons, I respectfully dissent.

A True Copy:

Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit