John BAKER, Margaret Baker, Elaine Coopersmith And Arnold Coopersmith, on behalf of themselves and all others similarly situated

v.

SUMMIT BANK.

No. Civ.A. 99–2010.

United States District Court, E.D. Pennsylvania.

Sept. 17, 1999.

Ellen Meriwether, J. Dennis Faucher, Miller, Faucher, Cafferty and Wexler, LLP, Philadelphia, PA, John F. Innelli, Innelli and Molder, Philadelphia, PA, for John. Baker, Plaintiffs.

Gene E.K. Pratter, Matthew A. Taylor, Duane, Morris & Heckscher, Philadelphia, PA, for Summit Bank, Defendant.

## *MEMORANDAM*

LUDWIG, District Judge.

Defendant Summit Bank moves to dismiss [1] Count IV of the complaint, which sets forth a supplemental claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Act (UTPCPA), 73 P.S. § 201 *et seq.*

Counts I–III, which this motion does not contest, assert federal claims under the Trust Indenture Act, 15 U.S.C. § 77aaa *et seq.* Jurisdiction over Counts I–III is federal question, 28 U.S.C. § 1331; over Count IV, supplemental, 28 U.S.C. § 1367.

### I. Background

This is a class action in which plaintiffs are purchasers of corporate debt certificates as to which Summit and its predecessors were the indentured trustees.[2] This is the third action involving these certificates, the other two having been filed under the Securities Act, 15 U.S.C. §§ 77k,

---

1. Under Fed.R.Civ.P. 12(b)6, the allegations of the complaint are accepted as true, all reasonable inferences are drawn in the light most favorable to the plaintiffs, and dismissal is appropriate only if it appears that plaintiffs could prove no set of facts that would entitle them to relief. *See Port Authority of New York*

*and New Jersey v. Arcadian Corp.*, 189 F.3d 305, 311 (3d Cir.1999).

2. Initially, First Valley Bank was indenture trustee. First Valley was acquired by United Jersey Bank, which merged with Summit. Compl. ¶ 38.

77o. *Neuberger v. Shapiro,* Civ. A. No. 97–7947 (class action by certificate purchasers); *Official Committee of Unsecured Creditors v. Shapiro,* Civ. A. No. 99–526 (action on behalf of bankrupt corporate certificate issuers) .[3]

The factual background of this action has recently been summarized in *Official Committee of Unsecured Creditors v. Shapiro,* Civ. A. No. 99–526 (motion to dismiss granted as to some and denied as to other defendants) (memorandum, Sept. 7, 1999, at 2–4). According to the complaint, the two corporations that issued the debt certificates, Walnut Leasing Equipment Corporation and Equipment Leasing Corporation of America (ELCOA), were manipulated by their owner, William Shapiro, acting in concert with others, to facilitate a Ponzi-type scheme. Compl. ¶¶ 1, 98.

Ultimately, Walnut and ELCOA were unable to generate sufficient income to overcome the deficit originally generated by Walnut. After the amount due debt certificate holders exceeded $58.4 million ($46 million issued while Summit or its predecessors acted as indenture trustee), Walnut and ELCOA filed for Chapter 11 bankruptcy relief on August 8, 1997.

This action is based on six trust indenture agreements entered into by Summit and Walnut and ELCOA between 1986 and 1996. The complaint alleges that "Summit breached its contractual and fiduciary duties and violated federal and state law by acting and continuing to act as the indenture trustee for the issuance of debt when it knew or should have known that the [c]ertificates sold by these entities would never be repaid." *Id.* ¶ 1. Specifically, it is averred that Summit 1) knew Walnut and ELCOA were "operating a Ponzi scheme"; 2) permitted Walnut and ELCOA to submit "false and misleading" disclosure statements to the SEC; and 3) acted as trustee while knowing that the interests of the certificate holders were "adverse to one another." *Id.* The complaint charges that this conduct on Summit's part violated the Pennsylvania

UTPCPA as well as the federal Trust Indenture Act.

## II. Analysis

■ Whether under Pennsylvania law the UTPCPA authorizes private causes of action against indenture trustees is a matter of first impression. The UTPCPA declares unlawful any "unfair methods of competition" or "unfair or deceptive acts or practices" that come within one or more of 21 enumerated practices. 73 P.S. § 201–2(4)I–xxi. The violation asserted in the complaint is the "catch-all" provision: "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Id.,* xxi. The UTPCPA expressly accords a private right of action to "any person who purchases ... goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property ... as a result of the use or employment by any person of a method, act or practice declared unlawful by ... this act...." 73 P.S. § 201–9.2.

■ The initial question is whether securities transactions are "goods or services" within the meaning of § 201–9.2 and, if so, whether an indenture trustee may be sued by a securities purchaser. Because the conclusion reached here is that security transactions are not ordinarily within the purview of the statute, it is not necessary to decide whether fraud—an essential element under the UTPCPA—is pleaded with specificity. Fed.R.Civ.P. 9(b).

The leading case in this area, handed down by our Court of Appeals, is *Algrant v. Evergreen Valley Nurseries Ltd. Partnership,* 126 F.3d 178 (3d Cir.1997)—which is relied on both by plaintiffs and defendant. In *Algrant,* plaintiffs were investors in a limited partnership that financed the purchase of a large nursery with a $13.5 million offering. *See id.,* at 180. The gist of the complaint was that the value of the nursery stock was inflated by the organiz-

---

**3.** The three actions are now jointly case managed.

ers of the venture, who did not inform investors of the overvaluation. *See id.* Predicting how the Pennsylvania Supreme Court would rule,[4] *Algrant* concluded that the sale of securities does not constitute "goods" or "services" as defined by the statute.

The essence of *Algrant* is that securities are not "goods" in the usual sense of the word—and that for their sale to be actionable as "services," the fraud must be in the transaction, not the securities themselves. Also, it considered the potentially problematical effect of Pennsylvania's regulation of securities transactions under the Pennsylvania Securities Act, 70 P.S. § 1–101 *et seq.* "We ... believe that allowing plaintiffs to obtain remedies under both the [UTPCPA] and the Securities Act is not consistent with coherent legislative intent." *Id.* Moreover, it dealt with the split among district courts as to whether the UTPCPA covers the sale of investment securities.

*Algrant* parsed out three securities fraud cases in which sales were held to be "squarely within the protection of the [UTPCPA]." *Id.* at 187–88. *See S. Kane & Son Profit Sharing Trust v. Marine Midland Bank,* 1996 WL 200603, at *3 (E.D.Pa. Apr. 25, 1996)(the UTPCPA applies to the sale of securities); *Advest, Inc. v. Kirschner,* 1994 WL 18592, at *2 (E.D.Pa. Jan. 21, 1994)("investment transactions are not excepted from the ambit of the statute"); *McCullough v. Shearson Lehman Bros. Inc.,* 1988 WL 23008, at *3 (W.D.Pa. Feb. 18, 1988)(the UTPCPA does not exclude stockbrokers). Without delineating the breadth of services that would invoke the Act's protection, *Algrant* stressed that the fraud had to relate to the actual sale and not the specific security.

*Id.* It is instructive that two of the cases involved stockbrokers who sold securities directly to customers. *See Advest Inc.,* 1994 WL 18592, at *2; *McCullough,* 1988 WL 23008, at *3 The analysis in *S. Kane & Sons* concerned only whether the transaction was a "personal use" as required by the statute—not whether the sale itself was within the statute.

In two other UTPCPA cases, third parties to sales transactions—a law firm and an insurance auditor—have been dismissed because of a lack of relationship to the transaction. In *Klein v. Boyd,* 949 F.Supp. 280 (E.D.Pa.1996), the UTPCPA was held not to apply to a law firm that prepared and executed securities disclosure documents but otherwise did not participate in the sale. "Pennsylvania and federal courts interpret the [UTPCPA] to require the allegation that the parties stand in some buyer-seller relation, though strict contractual privity is not required," *id.* at 284, *also quoting Brownell v. State Farm Mutual Ins. Co.,* 757 F.Supp. 526, 533 (E.D.Pa.1991) (citations omitted):[5]

> The CPL was designed to protect consumers from a number of unfair trade practices listed in the statute. This protection is aimed at commercial transactions between consumers and sellers, or those in the chain of supply who affirmatively mislead purchasers whose reliance was reasonable and specifically foreseeable.... The Consumer Protection Law was designed to equalize the market position and strength of the consumer vis-a-vis the seller.

Here, Summit's involvement as indenture trustee does not bring it within the consumer protection statute. The type of

---

4. As in *Algrant,* to apply Pennsylvania substantive law—*i.e.,* the UTPCPA—it is necessary to forecast how the Pennsylvania Supreme Court would decide the issue. *Markel v. McIndoe,* 59 F.3d 463, 473 n. 11 (3d Cir. 1995); *Nationwide Ins. Co. v. Resseguie,* 980 F.2d 226, 229 (3d Cir.1992) ("Because there is no reported decision by the Pennsylvania Supreme Court or by any Pennsylvania court that construes [the statute], the duty of the district judge under the *Erie* doctrine [is] to predict how the Pennsylvania Supreme Court would interpret the requirements of [the statute] if this case were before it."). Since *Algrant,* there have been no other pertinent decisions.

5. In *Brownell,* a health insurance policyholder sued an independent auditor whose analysis was used by the insurer to deny plaintiff's benefits claim. *See Brownell,* 757 F.Supp. at 526.

services rendered by the trustee fall well outside the line drawn by *Algrant.* What is more, the Trust Indenture Act offers plaintiffs a full remedial scheme.[6]

For these reasons, Count IV will be dismissed.

### ORDER

AND NOW, this 15th day of September, 1999, defendant Summit Bank's motion to dismiss Count IV is granted. A memorandum accompanies this order.

---

**6.** Treble damages can be obtained under the UTPCPA—albeit not the Trust Indenture Act, nor the Pennsylvania Securities Act. This is not a reason for expanding the substantive scope of the state statute.